Willie N. **LARKINS**, Appellant–Petitioner,

v.

Jeanette W. **LARKINS**, Appellee–Respondent.

No. 49A02–9612–CV–811.

Court of Appeals of Indiana.

Sept. 5, 1997.

Aaron E. Haith, Indianapolis, for Appellant–Petitioner.

Marilyn A. Moores, Deetta Steinmetz, Cohen & Malad, P.C. Indianapolis, for Appellee–Respondent.

## OPINION

GARRARD, Judge.

Willie N. Larkins ("Willie") appeals from the trial court's dissolution decree which provided an equal division of marital property. Specifically, Willie contends that the trial court erred in awarding Jeanette W. Larkins ("Jeanette") an equal share of the marital residence. We affirm.

**FACTS AND PROCEDURAL HISTORY**

The facts most favorable to the judgment indicate that Willie and Jeanette began their relationship in 1980. The parties lived together from September 1981 until August 1982 when they decided to take up separate residence. Despite living apart, they continued their relationship and spent considerable time at each others residences. The parties again shared a residence on Pennsylvania Avenue in Indianapolis beginning in August 1983. In 1984, Jeanette discovered that her babysitter's home was for sale. After viewing the home, she showed it to Willie. Subsequently, Willie purchased the home for $59,500;[1] however, he avoided a down payment due to his V.A. housing loan benefit. In October 1984, they moved into the home at 3850 North Delaware in Indianapolis.

Jeanette contributed her labor and resources to the improvements on the home, including blinds, carpeting, painting, and wallpapering. She was responsible for cleaning the home and helping with the yard work. After Jeanette moved out of the home on North Delaware in 1986, she continued an off and on relationship with Willie. She started spending the weekends back at the residence in September 1988, and she again moved into the North Delaware home when she married Willie in November 1988.

Although Jeanette was injured in May 1989 and was hampered physically until January 1990, she continued to do most of the cooking and household work. Additionally, from November 1988 until she moved out in June 1991, Jeanette assisted Willie in his unsuccessful bid for sheriff and aided him in cleaning, remodeling, and maintaining the properties that he rented or sold for profit.

Jeanette moved out in June 1991, but the parties remained married, without any legal separation or dissolution proceeding, until Willie filed his petition for dissolution of marriage in October 1995. A trial to the court was held on the petition on June 27, 1996. Subsequently and on its own motion, the trial court entered, in part, the following findings of fact:

> trial court, in its findings of fact, indicated that the purchase price was $59,900.

---

**1.** Willie testified that he paid $59,500 for the home, a figure which was supported by the mortgage signed in 1984. Record at 148–50. The

8. During the marriage, Wife's children resided in the marital household and Wife used her deputy sheriff income to support and educate her four (4) children. The eldest son was arrested, tried, and convicted of robbery, and Wife used her income to finance her son's legal defense in 1990. Husband had a tax levy on his IPD paycheck for a tax debt owed during his first marriage. Husband used his employment income and business income to pay the mortgage and utilities which allowed Wife to use her income for food, her personal needs and the support and education of her children.

. . .

11. In 1984, Husband purchased the marital home located at 3850 North Delaware, using his G.I. Bill funds, which required no down payment or closing costs. Husband purchased the house for $59,900.00 at 14% interest.

12. Wife and her four (4) children resided with Husband prior to the marriage, off and on, from September 1981 to 1982 and August 1983 to 1986 and the parties mutually decorated the home purchased in 1984. Husband paid the mortgage and utilities with his income. In July 1986, Respondent moved out of the home and took with her all of the furnishings and household items which had been purchased from 1984 to 1986. Husband thereafter purchased all new furnishings.

13. The Court finds that in June 1991 the house at 3850 North Delaware had a value of approximately $123,000.00, and the parties agree that Husband owed a lien of $58,053.00 for net value of $64,947.00; the property therefore had a net appreciation value in the equity during the periods of cohabitation and marriage of $64,947.00.

Record at 119–21. Additionally, the trial court made, in part, the following conclusions of law:

2. The property owned by the parties between 1988 and 1991 should be divided pursuant to Indiana Code 31–1–11.5–11. The Court does not find that there are factors present which would warrant a deviation from the statutory presumption of an equal division of this property.

3. The periods of cohabitation prior to the marriage and the ongoing relationship of the parties prior to the marriage shall be considered by this Court as a factor in dividing property between the parties.

. . .

5. The parties' marital residence located at 3850 N. Delaware Street, Indianapolis, Indiana had equity of $64,947.00 at the time of the parties' physical separation in June of 1991.

Record at 123–24.

### STANDARD OF REVIEW

The trial court entered findings of fact and conclusions of law *sua sponte*. "When a trial court makes specific findings on its own motion, the general judgment will control as to the issues upon which the court has not found and the specific findings control only as to the issues they cover." *Lung v. Lung*, 655 N.E.2d 607, 609 (Ind.Ct.App. 1995), *trans. denied*. We may not reverse the trial court's findings unless they are clearly erroneous. *Id.* "Findings are clearly erroneous only if the record contains no facts supporting them either directly or by inference." *Id.*

Our standard for reviewing the trial court's division of marital property is found in *Truman v. Truman*, 642 N.E.2d 230 (Ind. Ct.App.1994).

A trial court's decision regarding the division of marital property is reviewable for an abuse of discretion. We consider only that evidence most favorable to the trial court's disposition of the property.... We will reverse a trial court only where the result reached is clearly against the logic and effect of the facts and circumstances before the court.

*Id.* at 234 (citations omitted).

### DISSCUSION AND DECISION

Willie argues that the trial court abused its discretion in awarding Jeanette an equal share of the equity in the marital residence. He contends that the trial court erred in including in the marital estate the net appreciated value of the marital residence during the periods of cohabitation prior to the mar-

riage. To support his contention, Willie cites *Glasgo v. Glasgo,* 410 N.E.2d 1325 (Ind.Ct. App.1980), *trans. denied,* and *Chestnut v. Chestnut,* 499 N.E.2d 783 (Ind.Ct.App.1986).

In *Glasgo,* husband and wife were divorced after 11 years of marriage. Subsequent to the divorce, the parties reconciled and lived together for five years. After the parties ceased living together, the wife filed a complaint seeking one-half of the value of the assets accumulated during the period of cohabitation. The trial court awarded the wife a share of the property, and Husband appealed. He contended, in part, that the trial court erred in failing to grant his motion to dismiss for failure to state a claim upon which relief could be granted. We found that the wife's complaint, which invoked both contractual and equitable grounds for relief, stated an enforceable claim which was not against public policy. *Id.* at 1331.

We do not find *Glasgo* analogous to this case. In *Glasgo,* the wife was not seeking relief pursuant to a dissolved marriage. Her claim was based solely on the cohabitation of the parties which did not lead to a subsequent marriage. In the case at bar, Jeanette was awarded a share of the *marital property* pursuant to Indiana Code § 31–1–11.5–1 et seq., which was inapplicable in *Glasgo.*

In *Chestnut,* husband and wife cohabitated approximately four years prior to their marriage. The trial court considered the actions of the parties during the four year period of cohabitation in distributing the marital assets. We held that "[i]t was within the trial court's discretion to consider this evidence when distributing marital assets under principles of equity." *Id.* at 787. We agree that *Chestnut* is instructive, but we find that it supports the judgment of the trial court.

Although Willie acknowledges that the trial court may consider periods of cohabitation followed by marriage in determining a proper distribution of the marital estate, Appellant's Brief at 17, he nevertheless seeks a reversal of the trial court's "inclusion in the marital estate the net appreciated value of the home at 3850 North Delaware Street for periods of cohabitation prior to the marriage." Appellant's Brief at 16.

Indiana Code § 31–1–11.5–11(b) provides that the "court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts...." Therefore, all property, whether acquired before or during the marriage, is included in the marital estate for property division. *Cowden v. Cowden,* 661 N.E.2d 894, 897 (Ind.Ct.App.1996). Willie's argument fails because it hinges on the assumption that Jeanette's claim to a share of the marital residence was based on the cohabitation of the parties. Although the trial court could and did consider the cohabitation and ongoing relationship of the parties in dividing the property pursuant to *Chestnut,* the marital residence was clearly marital property. Therefore, pursuant to Indiana Code § 31–1–11.5–11(b), the trial court was required to include it in the marital estate which was subject to division by the trial court, regardless of premarital cohabitation.

■ Given that the home on Delaware Street was marital property, we cannot say, considering only the evidence favorable to the trial court's disposition, that the trial court's equal division of the marital assets, including the marital residence, was clearly against the logic and effect of the facts and circumstances. "When dividing the marital property, the trial court shall presume that an equal division of the marital estate is just and reasonable." *Scott v. Scott,* 668 N.E.2d 691, 705 (Ind.Ct.App.1996) (citing IND.CODE § 31–1–11.5–11(c)). "The party challenging the trial court's distribution must overcome a strong presumption that the court complied with the statute." *Id.*

■ Jeanette found the home and encouraged Willie to purchase it. Willie purchased the home in 1984, at a time when he was living with Jeanette. They lived in the home together from 1984 until 1986, and Jeanette again moved into the home when the parties married in 1988. The home appreciated significantly in value, as it was purchased in 1984 for $59,500, and valued at $123,000 as of June 1991, when Jeanette moved out. The interruption in the cohabitation of the parties

prior to the marriage did not preclude the trial court from considering the cohabitation and ongoing relationship in its division of marital property. Jeanette contributed her labor and resources to the improvements on the home during the parties' cohabitation, and she was responsible for all the cleaning and helped with the yard work. It is also noteworthy that although Willie purchased the home prior to the marriage, no down payment or closing costs were required. The trial court did not err in considering the cohabitation and relationship of the parties prior to the marriage in dividing the marital estate.

Accordingly, we affirm.

STATON and BAKER, JJ., concur.