**Edward R. BERTHOLET, Appellant–Respondent,**

v.

**Linda BERTHOLET, Appellee–Petitioner.**

No. 64A03–9907–CV–280.

Court of Appeals of Indiana.

March 27, 2000.

Duane W. Hartman, Blachly Tabor Bozik & Hartman, Valparaiso, Indiana, Attorney for Appellant.

JoAnne Lohmeyer, Valparaiso, Indiana, Attorney for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Respondent Edward Bertholet ("Husband") appeals the trial court's Judgment and Decree of Dissolution. We affirm in part, reverse in part, and remand with instructions.

### Issues[1]

Husband argues on appeal that the trial court abused its discretion when it divided

---

1. Husband makes the additional general argument that the trial court failed to make findings on essential issues regarding alleged-ly uncontroverted evidence. Husband therefore urges this Court to remand this cause to the trial court "for the entry of proper find-

the marital property. In support of this contention, Husband makes nine allegations of error, which we consolidate and restate as:

I. Whether the trial court properly divided the marital estate equally between Husband and Wife, notwithstanding the fact that Husband acquired numerous assets prior to his marriage to Wife;

II. Whether the trial court erroneously valued Husband's bail bond business;

III. Whether the trial court failed to find that Wife paid herself contrary to the provisions of the provisional order;

IV. Whether the trial court failed to find that Wife dissipated marital assets; and,

V. Whether the trial court erroneously awarded appellate attorney fees to Wife.

## Facts/Procedural History

The facts most favorable to the judgment indicate that Husband and Wife began dating in September of 1977. At that time, Husband was self-employed as a Liable Agent in the bail bond business. Wife began accompanying Husband to jails and assisting Husband in his business. On October 15, 1981, Wife and her two minor children from a previous marriage began living in Husband's home. Over the years, Wife became more involved with Husband's business, and by 1987, Wife worked full-time in the business. Upon Husband's retirement in December of 1993, Wife became President and Liable Agent for the bail bond business.

Prior to being married, Husband and Wife held themselves out to the public as being married. On May 15, 1991, Husband and Wife were married; and, while Wife offered to sign a prenuptial agreement, Husband declined the offer.

Wife filed a Petition for Dissolution of Marriage on April 21, 1997. On June 2, 1997, the trial court entered an Agreed Provisional Order, which stated, among other things, "Wife shall receive a net of $1,000.00 per week as her salary from the business." (R. 8, 9.) On May 6, 1998, Wife filed her Motion for Special Findings and Conclusions. On June 2, 1999, the trial court entered its Judgement and Decree of Dissolution. In so doing, the trial court made numerous findings of fact and conclusions of law pertinent to its property division, including the following:

### FINDINGS OF FACT

1. In 1977, the parties began dating.

2. At the time Husband was self-employed, working out of the basement of his home as a liable agent in the bail bond business. Previously, he had been a sub-agent for another agency on a part-time basis.

3. In 1977, while on dates, Wife accompanied Husband to jails to write bonds and otherwise assisted Husband in his business.

4. After working in a law office, [W]ife was employed full time at

ings." (Appellant's Brief at 19.) In making this argument, however, Husband fails to direct our attention to any specific essential uncontroverted evidence presented to the trial court and not contained in the trial court's final decree. Instead, Husband simply states that uncontradicted evidence was presented pursuant to Indiana Code section 31–15–7–5(1)(2)(4) and (5) and generally refers to "Respondent's Exhibit 20" which summarizes the parties' respective assets prior to marriage. (Appellant's Brief at 19–20.)

The trial court's judgment in the case at bar contained forty-one findings of fact and twenty conclusions of law which spanned nine typed pages in the record. Our review of this judgment leaves us convinced that the trial court's thoughtful and detailed findings sufficiently encompassed all essential issues in this cause thereby enabling this Court to conduct a meaningful review, with the exception of the trial court's valuation of the parties' bail bond business. Thus, we conclude that a general remand for more specific findings, except as mentioned above, is not warranted.

Pfizer as an executive secretary from 1977 to 1984.

5. Beginning in 1979, Wife began typing correspondence for Husband at this [sic] place of business in his home and drove Husband to different jails for his business purposes.

6. On October 15, 1981, Wife and her two (2) minor children from a previous marriage began living in Husband's home.

7. Wife's employment at Pfizer ended in 1984 when the company closed its Valparaiso operation.

8. Wife qualified for grants to pay her re-training expenses and obtained an associate's degree in computers in 1987.

9. While she learned computer systems, she computerized Husband's bail bond business[.]

10. In addition to computerizing the business, Wife intensified her involvement by going to court and doing paperwork, and in 1985 she obtained her own bail bond license for Husband's business.

11. In 1987 Wife worked full time in the business and received a check of Two Hundred Fifty Dollars ($250.00) per week to enable Wife to have her own spending money without asking Husband for cash.

12. Husband and Wife held themselves out to be married at bond conventions and Shriner's activities although they were not yet married. Husband did not correct anyone as to their marital status and encouraged the representations of their marital status.

13. Husband added Wife to his checking account as joint owner before the marriage and she used the account.

14. Husband assisted financially in raising Wife's two (2) children.

15. For the tax years of 1986, 1987, and 1988[,] Husband was audited by the Internal Revenue Service concerning treatment of BUF (Build Up Fund) accounts. Wife and the accountant did the preparation and presentation of the audit. Husband did not become actively involved.

16. In 1986, Wife's father deeded to her an interest in his residence on Harrison Boulevard. Later, she became sole owner.

17. Even though the parties were not married, they had a domestic relationship beginning on October 15, 1981 which lasted until [the] filing of the Petition for Dissolution of Marriage. Wife decorated, cooked, cleaned, attended social events, etc. for Husband, and was involved in his business.

18. In December, 1988, the business grew too large for the basement of the marital residence and moved to a separate business location near the Porter County Jail.

19. The number of sub-agents and gross sales of bonds continued to increase during this period.

20. On May 15, 1991, the parties married.

21. Although Wife offered to sign a pre-nuptial agreement, Husband declined the offer. Husband prepared a will to bequeath to Wife a life estate in his home on Sheffield and gave her ownership of all personal household furnishings. He discussed leaving the business to the Wife on his demise.

22. Husband incorporated the bail bond business as a sub-chapter S corporation in late 1991 and had 100% interest in the business. Wife held office in the corporation while Husband was president.

23. Wife and Husband began a newsletter for courts, attorneys, and other interested parties. This newsletter is the only one in

Indiana. Husband turned over the writing of the newsletter to Wife. She also selected and trained agents for the business.

24. On December 31, 1993, Husband retired and turned the business operation entirely over to Wife. He signed off the corporate checking account and resigned his presidency of the corporation. He was not the liable agent any longer; Wife was.

25. Husband began spending more time at the parties' condo in Florida. . . .

26. Wife became the president of the corporation and liable agent for all bonds upon Husband's retirement.

27. Husband's home on Sheffield is titled only in his name and has a mortgage lien on it in favor of Husband's daughter, Kelly. The home is paid for.

28. The Florida condo is titled jointly and has no mortgage on it.

29. The parties also own a home, which they rent out, in Monticello. This home is paid for.

30. Wife removed Forty Thousand Dollars ($40,000.00) from her BUF account, with Husband's permission, after filing the Petition for Dissolution.

31. Husband has removed One Hundred Thousand Dollars ($100,000.00) from his BUF account post-petition and without Wife's or this Court's permission in violation of the Restraining Order. He also took Ten Thousand Dollars ($10,000.00) out of a CD.

32. The corporation business account had a Sixty–Five Thousand Dollars [sic] ($65,000.00) balance upon filing, although the normal non-encumbered balance is Forty Thousand Dollars ($40,000.00).

33. Husband's name has recognized value in the bail bond business and therefore has substantial value in and of itself which influences competition.

34. At the time of filing the Petition for Dissolution, Ed Bertholet and Associates, Inc. had a value of One Million One Hundred Fifty [Thousand] Dollars ($1,150,0000.00) with Husband running the business.

35. The loss rate on bonds for the business is 1.5% of Seventeen Million Dollars ($17,000,000.00) in yearly sales, making it highly · successful. By Husband's testimony, the business has earnings above the average for the bail bond industry.

. . . .

37. At Husband's request, an audit of the business expenses for 1997 and 1998 by George S. Olive determined that Husband received "distributions" of Three Thousand Nine Hundred Sixty–Six Dollars and Twenty–Four Cents ($3,966.24) from the corporate accounts, which were not business expenses; and Wife received Nineteen Thousand Five Hundred Eighty–Three Dollars and Fifteen Cents ($19,583.15), which were reported on a 1099 as income to Wife. This satisfies both individual and corporate liabilities. By custom and agreement, the parties have paid non-business bills out of the business for years.

38. Wife turned over operation of the business to Husband on May 7, 1998, by agreement in open court.

39. Wife is receiving One Thousand Dollars ($1,000.00) per week against her portion of the marital property division.

. . . . .

## CONCLUSIONS OF LAW

1. Division of marital property is presumed to be equal. Indiana Code Sections *31–15–7–4* and *31–15–7–5.*

2. Both parties contributed to the acquisition of the marital estate.

3. The parties co-habitated since October 15, 1981 and all property whether acquired before or during the marriage is included in the marital estate for division. See *Larkins v. Larkins* [,] 685 N.E.2d 88 (Ind.Ct.App.1997).

4. The Husband was found in contempt on February 27, 1998 for violating the Agreed Provisional Order by removing Wife as president of the corporation.

5. Wife incurred attorney fees of the contempt of One Thousand One Hundred Eighty–Five Dollars and Twenty–Five Cents ($1,185.25), which Husband shall pay within thirty (30) days.

6. The accounting of the business by George S. Olive has resolved all issues concerning use of corporate funds by both parties.

. . . .

14. That no reason is found to deviate from the presumptive ⁵⁰⁄₅₀ division of assets. A fifty percent (50%) share equals One Million Four Hundred Seventy–Six Thousand Eight Hundred Thirteen Dollars and Eighty–Three Cents ($1,476,813.83). Accordingly, Wife should receive cash from Husband in the sum of Three Hundred Eighty[-]Two Thousand Three Hundred Forty–Eight Dollars and Ninety–Four Cents ($382,-348.94) to receive a fifty percent (50%) distribution. However, as of June 5, 1999 Wife will have received Fifty–Five Thousand Dollars ($55,000.00) in weekly payments which are to be a portion of the distribution to her. Therefore, the amount Husband should pay to Wife is Three Hundred Twenty–Seven Thousand Three Hundred Forty Eight Dollars and Ninety–Four Cents ($327,348.94). . . .

15. That Husband shall pay to JoAnne Lohmeyer the sum of One Thousand One Hundred Eighty–Five Dollars and Twenty–Five Cents ($1,185.25) within thirty (30) days for the February 27, 1998 contempt hearing.

16. That each party shall be responsible for their attorney fees except those awarded in the previous paragraph.

. . . .

18. This Court orders that the Husband's issues of questioned business expenditures of both parties have been resolved by the George S. Oliveaudit and subsequent acceptance by both parties of the resolution.

(R. 104–13.)

As part of the property division, Husband was awarded the bail bond business which the court assigned a value of one million one hundred fifty thousand dollars ($1,150,000.00). The following appeal ensued.

## Discussion and Decision
### *Standard of Review*

The division of marital assets lies within the sound discretion of the trial court. *Bloodgood v. Bloodgood*, 679 N.E.2d 953, 956 (Ind.Ct.App.1997). Thus, we will reverse only if that discretion is abused. *Id.* "An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Wells v. Collins*, 679 N.E.2d 915, 916 (Ind.Ct.App.1997). As a reviewing court, we may not reweigh the evidence or assess the credibility of witnesses, and we consider only the evidence most favorable to the trial court's disposition of marital property. *In re Marriage of Dall*, 681 N.E.2d 718, 720 (Ind.Ct.App.1997). In addition, the party challenging the trial court's property division must overcome a strong presumption that the court complied with the statutory guidelines. *Nill v. Nill*, 584 N.E.2d 602, 604 (Ind.Ct.App.1992).

■ We note that the trial court made special findings of fact and conclusions of law at the request of Wife pursuant to Indiana Trial Rule 52(A). Our standard of review is therefore two-tiered. *Heiligenstein v. Matney,* 691 N.E.2d 1297, 1299 (Ind.Ct.App.1998). "We first determine whether the evidence supports the findings of fact and then whether those findings support the judgment." *Id.* On review, we do not set aside the trial court's findings or judgment unless clearly erroneous. T.R. 52(A). A finding is clearly erroneous when there is no evidence or inferences reasonably drawn therefrom to support it. *Shively v. Shively,* 680 N.E.2d 877, 882 (Ind.Ct.App.1997). The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* In making our determination, we neither reweigh evidence nor judge witness credibility, but we will consider only the evidence and reasonable inferences therefrom which support the judgment. *Heiligenstein,* 691 N.E.2d at 1299. We may affirm the judgment on any legal theory supported by the findings if that theory is consistent with "all of the trial court's findings of fact and the inferences reasonably drawn from the findings[,]" and if we deem such a decision prudent in light of the evidence presented at trial and the arguments briefed on appeal. *Mitchell v. Mitchell,* 695 N.E.2d 920, 924 (Ind.1998).

## I. Equal Division of Marital Property

Husband asserts that the uncontroverted evidence shows he owned numerous marital assets at the time of the parties' marriage in 1991. Consequently, Husband concludes, without further explanation or citation to authority, that the requisite rebuttal evidence for deviating from the presumption of an equal division found at Indiana Code section 31–15–7–5 was presented "but completely ignored by the trial court" resulting in reversible error. (Appellant's Brief at 22.) We disagree.

■ While Husband is correct in his statement that a trial court *may* deviate from an equal division of property in certain limited circumstances, *see* IND.CODE § 31–15–7–5, there is nothing in this statute which suggests that the trial court *must* deviate from the traditional $^{50}\!/_{50}$ split simply because one party presents evidence that he or she owned certain assets prior to marriage. To the contrary, Indiana Code section 31–15–7–4(a) provides, in pertinent part, that "[i]n an action for dissolution of marriage ... the court shall divide the property of the parties, *whether ... owned by either spouse before the marriage ...* acquired by either spouse in his or her own right ... after the marriage ... and before final separation of the parties ... or ... acquired by their joint efforts." (Emphasis added.) Thus, contrary to Husband's contention here, all property, whether acquired before or during the marriage, is generally included in the marital estate for property division. *See Larkins v. Larkins,* 685 N.E.2d 88, 91 (Ind.Ct.App.1997); *see also Nill v. Nill,* 584 N.E.2d 602, 604 (Ind.Ct. App.1992) (stating that Indiana law has been uniformly interpreted as requiring the trial court to divide "all" the property of the parties, specifically prohibiting the exclusion of any assets from the scope of the court's powers to divide and award). Moreover, when dividing the marital property, the trial court shall presume that an equal division of the marital estate is just and reasonable. *Larkins,* 685 N.E.2d at 91. Finally, a trial court "may consider periods of cohabitation followed by marriage in determining a proper distribution of the marital estate." *Id.; see also Chestnut v. Chestnut,* 499 N.E.2d 783 (Ind.Ct. App.1986) (holding that it was within the trial court's discretion to consider the actions of the parties during the four year period of cohabitation prior to marriage in distributing the marital assets).

■ . Our review of the record reveals that the trial court gave careful consideration to the various contributions made by

both parties to the acquisition of the marital property during the parties' lengthy cohabitation and subsequent marriage. While it is true that the evidence indicates Husband brought certain financial assets into the relationship prior to the parties' marriage, the evidence also supports the trial court's finding that throughout the parties' cohabitation and marriage, Wife contributed her labor by cooking, cleaning, decorating, and attending social events with Husband. The evidence also supports the trial court's findings that Wife contributed to the operation of the bail bond business both before and during the marriage by accompanying Husband on trips to various jails, writing bonds, typing correspondence, computerizing the business, and eventually overseeing the entire business operation as President and Liable Agent after Husband retired.

 Husband's argument here amounts to nothing more than an invitation to reweigh the evidence, and this we cannot do. While it is true that the trial court must consider a spouse's contribution of prior acquired property, that is but one factor for review and is entitled to no special weight. *Wright v. Wright*, 471 N.E.2d 1240, 1244 (Ind.Ct.App.1984). In its Judgment and Decree of Dissolution, the trial court concluded that both Husband and Wife contributed to the acquisition of the marital estate and that there was no reason to deviate from the presumptive ⁵⁰⁄₀₀ division of assets. Our review of the record reveals that this conclusion was supported by the trial court's findings of fact, which, in turn, were supported by the evidence. Moreover, in failing to demonstrate how the inclusion of his pre-marital assets in the marital estate would be unjust and unreasonable, Husband failed to rebut the strong statutory presumption contained in Indiana Code section 31–15–7–5 favoring an equal division of the entire marital estate.

The trial court was not constrained to find Husband's contribution of numerous assets outweighed the evidence of Wife's non-monetary contributions to the marriage. While the evidence may be sufficient to support a determination different than the one reached by the trial court, we cannot say that the evidence in the case at bar mandates such a determination. Furthermore, we cannot say that the decision of the trial court was clearly against the logic and effect of the facts and circumstances before it. Accordingly, we find that the trial court did not err in dividing the entire marital estate equally between the parties.

## II. Business Valuation

Next, Husband asserts that the trial court erred in its valuation of the bail bond business. In support of his assertion, Husband points out that the trial court adopted James Stan's ("Stan") valuation of $1,150,000.00 as the value of the bail bond business even though Stan testified that the business was only worth $950,000.00 if retained by Linda. Husband argues that the difference in the two valuations is attributable to "personal goodwill" and because goodwill attributable to the person is not a marital asset, it is not subject to division. In support of his argument, Husband directs out attention to *Yoon v. Yoon*, 711 N.E.2d 1265 (Ind.1999). In *Yoon*, our supreme court held that goodwill, which is attributable to the business enterprise, is divisible property, but to the extent that the goodwill is personal to the professional or business owner, it is a surrogate for the owner's future earning capacity and is therefore not a divisible marital asset. Wife counters that, according to Husband's own estimations for bail bond businesses, the valuation of his business could have been as high as $1,350,000.00 minus the personal good will; and thus, the evidence supported the value the trial court placed on the business.

 The trial court's only findings regarding its valuation of the bail bond business were as follows:

33. Husband's name has recognized value in the bail bond business and therefore has substantial value in and of itself which influences competition.

34. At the time of filing the Petition for Dissolution, [the bail bond business] had a value of One Million One Hundred Fifty Thousand Dollars ($1,150,000.00) with Husband running the business.

(R. 107.) Apart from these two statements, the record is silent as to how the trial court valued the bail bond business; and more specifically, to what degree, if any, such valuation incorporated either personal or enterprise goodwill. Thus, we are unable to determine whether the trial court properly valuated the bail bond business and are therefore constrained to remand this cause to the trial court for a determination of the value of the business, excluding that amount of the business that is attributable to Husband's personal good will, if any. *See Yoon v. Yoon,* 711 N.E.2d 1265 (Ind.1999).

We take pause here to address another contention raised by Husband concerning the court's valuation of the bail bond business. Husband asserts that the trial court failed to properly value and divide the parties' BUF accounts.[2] Specifically, Husband argues that because the BUF account balances fluctuate over time, increasing when interest is earned and decreasing when bonds are called, the trial court erred in assigning a specific value to the accounts. Husband further asserts that in order to be "fair and equitable," the trial court should have divided all BUF accounts that were in existence at the time Wife left the business "fifty-fifty" and that

"any cost associated with returning a defendant who fails to appear [in] court would be paid by the corporation, but shared equally at the time the proceeds were divided." (Appellant's Brief at 28.)

■ In a dissolution action, the trial court has broad discretion in determining the value of property, and its valuation will only be disturbed for an abuse of discretion. *Reese v. Reese,* 671 N.E.2d 187, 191 (Ind.Ct.App.1996). If there is sufficient evidence to support the trial court's decision, no abuse of discretion occurred. *Id.* Moreover, our supreme court has made it clear that the trial court has discretion to value the marital assets at any date between the date of filing the dissolution petition and the date of the hearing. *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind. 1996). Also, choice of an early valuation date for an asset, which decreases in value, is not necessarily an abuse of discretion. *Reese,* 671 N.E.2d at 191. Our supreme court has explained that "[t]he selection of the valuation date for any particular marital asset has the effect of allocating the risk of change in value of that asset between the date of valuation and date of the hearing. We entrust this allocation to the discretion of the trial court." *Quillen,* 671 N.E.2d at 103.

■ Our review of the record reveals that the valuation date for Wife's BUF accounts was December 31, 1997, which was after the petition for dissolution was filed on April 21, 1997, and before the final hearing, which was held on May 6, 1998. Likewise, the February 23, 1998, valuation date for Husband's BUF account at Amwest Insurance Group, Inc., was permissible. Moreover, our review of the record reveals that the values selected by the trial

---

**2.** Build Up Fund ("BUF") accounts are, in essence, "savings accounts" and are required in the bail bond industry. BUF accounts are designed to ensure that the Liable Agent can pay the total bond amount if the defendant fails to show up in court. The BUF account is funded by a portion of the premium (usually ten percent) that is collected by the local bond agent (or sub-agent) from the defendant and forwarded, via the Liable Agent, to a national agent for deposit in the BUF account. All BUF accounts are personal bank accounts made under the individual Liable Agent's name rather than the corporate name. Thus, it is the Liable Agent, not the corporation or the sub-agents, who remains liable for the full amount of the bond.

court for these BUF accounts were supported by the evidence and that Husband, while suggesting a valuation method that he feels would be more equitable, has failed to provide any evidence as to how the trial court's valuation of the BUF accounts constitute an abuse of discretion. As stated previously, our trial courts have great discretion when valuing marital assets in a dissolution proceeding and said valuation will only be disturbed on appeal if the trial court abuses its discretion. Based on the foregoing, we find no error in the trial court's valuation of Wife's BUF account's and Husband's BUF account at Amwest Insurance Group, Inc.

■ We observe, however, that the date of valuation for Husband's BUF account at People's Bank was March 31, 1997, approximately one month prior to the filing of the dissolution petition. While we recognize that the figure adopted by the trial court regarding the value of Husband's BUF account at People's Bank was the identical figure provided by Husband to Wife during the pre-trial discovery process, we are constrained to remand this issue with instructions that the trial court re-determine the value of said account.

### III. Provisional Order

■ We next address Husband's claims that Wife paid herself contrary to the terms of the Provisional Order and that the trial court erred in failing to account for Wife's alleged overpayment in its final order. Husband asserts that Wife, while operating the bail bond business pursuant to the parties' Agreed Provisional Order, paid herself $149,597.01 in 1997, but that the provisional order only permitted a net salary of $1,000.00 per week from the business. Husband further alleges that Wife "took $19,583.15 from the business in 1998 for non-business expenses" and that the trial court "made no adjustment for such overpayment in its final order." (Appellant's Brief at 21.) Thus, Husband concludes the trial court erred by failing to enforce the provisional order.

Wife denies that she paid herself contrary to the parties' agreed provisional order. She further states that Husband's argument is misleading because the 1997 tax return he refers to as evidence of Wife's alleged violation of the provisional order does not account for the special circumstances regarding the BUF accounts. Wife further argues that the $19,583.15 income for non-business expenses was resolved by issuing a 1099 to Wife and points out that Husband also had non-business expenses in the amount of $3,966.24 charged to the business account.

■ Initially, we note that a provisional order is designed to maintain the status quo of the parties. *Fitzgerald v. Travelers Ins. Co.*, 567 N.E.2d 159, 161 (Ind.Ct.App.1991). Moreover, public policy of this state favors separation agreements and parties are often times given the freedom to make continuing financial arrangements in the spirit of amicability and conciliation. *Myers v. Myers*, 560 N.E.2d 39, 42 (Ind.1990). Such agreements are binding upon the parties if approved by the trial court. *Id.*

Here, the parties entered an Agreed Provisional Order that was approved by the trial court and which, among other things, set forth the terms of their continuing financial arrangement as follows:

3. That Husband shall receive $1,000.00 per week from the business as dividends and shall be solely responsible for the tax consequences thereon.

4. That the Wife shall receive a net $1,000.00 per week as her salary from the business.

5. That the Wife shall continue to pay from the business income, those expenses of the business; Husband, Wife, her estimated personal taxes, build up funds accounts, etc. that she has paid in the past to maintain status quo.

(R. 8.)

Our review of the record reveals that Wife received a weekly gross pay of

$1,600.00 from the bail bond business to obtain a weekly net payroll check of $1,000.00, the amount agreed to in the provisional order. Moreover, the record reveals that both Husband and Wife used the corporate accounts for non-deductible personal expenditures, as they each had done in past years, and that such expenditures were subsequently charged to Husband and Wife as income. Finally, there was testimony explaining that part of the income reflected in Wife's 1997 tax return was comprised of certain amounts contained in the BUF accounts held in her name because the IRS requires said amounts to be reported as income, so that the BUF account money, and any interest earned thereon, may be taxed, despite the fact that the owner of the account (in this case, Wife) can't use the money for personal expenditures.

Based on the foregoing, we find that Husband has failed to show that Wife paid herself contrary to the terms of the provisional order. Moreover, the evidence supports the trial court's finding # 37 as well as conclusions # 6 and # 18 set forth previously, which, in essence state that Husband's issues regarding the business expenditures of both parties were resolved. Thus, we find no error.

## IV. Alleged Dissipation

We next address Husband's contention that Wife dissipated marital assets. Husband contends that during the marriage, Wife was deeded the Harrison Street House by her father, and that Wife subsequently deeded one-half interest of said house to her daughter for no consideration. Thus, Husband asserts that the trial court erred by only including in the marital estate Wife's remaining one-half interest in the Harrison Street House. We disagree.

▮▮▮▮ Waste and misuse are the hallmarks of dissipation. *In re Marriage of Coyle*, 671 N.E.2d 938, 943 (Ind.Ct.App. 1996). Our legislature intended that the term "dissipation" carry its common meaning denoting "foolish" or "aimless" spending. *Id.* Dissipation has also been described as the frivolous, unjustified spending of marital assets that includes the concealment and misuse of marital property. *Id.* It generally involves the use or diminution of the marital estate for a purpose unrelated to the marriage and does not include the use of marital property to meet routine financial obligations. *Id.*

▮▮▮▮ Factors that a trial court may consider in determining whether assets have been dissipated include: (1) evidence of intent to hide, divert or deplete the asset; (2) whether the expenditure was made for a purpose entirely unrelated to the marriage; (3) the remoteness in time to the filing of the dissolution petition; and (4) whether the expenditure was excessive or de minimis. *In re Marriage of Bartley*, 712 N.E.2d 537, 543 (Ind.Ct.App.1999). However, whether dissipation had occurred cannot be determined by applying only one of these factors. The proper inquiry requires the trial court to weigh the various considerations. *In re Marriage of Coyle*, 671 N.E.2d at 943. Moreover, while intent is not an essential element of dissipation, intent to hide, divert, or otherwise deplete the marital estate is relevant. *Id.* Additionally, the fact that one spouse or the marriage itself does not benefit directly from an expenditure does not, standing alone, require a finding that a dissipation of marital assets has occurred. *Id.*

Indiana Code section 31–15–7–5(4) directs the trial court to examine the conduct of the parties during the marriage so that the court is not limited to an examination of any particular time period. *Id.* However, "transactions which are remote in time and effect, and where many years of marriage have intervened, may be deemed insignificant, while transactions which occur during the breakdown of the marriage, just prior to filing a petition or

during the pendency of an action, may require heightened scrutiny." *Id.*

When considering a spouse's claim of dissipation, the trial court should exercise caution in determining that an asset has been wasted or misused. *Id.* Moreover, the non-dissipating party's participation in or consent to the expenditure is a relevant consideration. *Id.*

The record reveals that the Harrison Street House belonged to Wife's parents until Wife's mother died in 1986. At that time, Wife's father gave Wife a one-half interest in the house and they owned it as joint tenants. Some time later, Wife's father deeded Wife his remaining interest in the Harrison Street House thereby transforming Wife into the sole owner. After Wife's father died, Wife contemplated selling the Harrison Street House. However, Husband encouraged Wife not to sell the property but told her to keep it for her daughters because "you don't know what will happen in life." (R. 154.) Eventually, while still married to Husband, Wife deeded a one-half interest in the Harrison Street House, with Husband's knowledge and encouragement, to her daughter, who was unwed and who had been residing in the home with her young daughter since 1993. At the time of trial, the Harrison Street House was valued at $78,000.00 and the trial court included Wife's remaining one-half interest in said property, or $39,000.00, in the marital estate.

Based on the foregoing, we find that the evidence supported the trial court's determination that Wife did not dissipate marital assets. There is no indication in the record that Wife tried to hide, divert, or otherwise deplete the marital estate by transferring a one-half interest in the Harrison Street House to her daughter. Moreover, Husband knew of and consented to the transaction prior to the transfer, which occurred during the parties' marriage.

Husband's argument that $39,000 is not de minimis, standing alone, is also unavailing. As stated earlier, when determining whether dissipation has occurred, the trial court is required to look at all of the factors and conduct during the marriage to determine whether one party has participated in the wasteful or unjustified spending of marital assets. Moreover, while we recognize that thirty-nine thousand dollars may not generally be considered a de minimis amount, we are not convinced that such a transfer, under the facts of this case, was excessive in light of the fact that the marital estate totaled close to three million dollars, the transfer was made with Husband's consent during the parties' marriage, and the property interest had originally been given to Wife by her father. *Cf. Stutz v. Stutz,* 556 N.E.2d 1346 (Ind.Ct.App.1990) (holding that dissipation occurred where parties owed approximately twenty-nine thousand dollars in consumer debt, eighty-five to ninety percent of which was incurred by wife and where wife bounced forty-seven checks in one year resulting in finance and overdraft charges of approximately sixty-five hundred dollars); *Melnik v. Melnik,* 413 N.E.2d 969 (Ind.Ct.App.1980) (holding that wife dissipated marital assets when she withdrew a Certificate of Deposit in the amount of forty-thousand dollars *after* the parties separated and made gifts of over twenty-five thousand dollars to the parties' grandchildren).

Finally, we note that the court may only divide property with a vested interest at the time of dissolution. *Mullins v. Matlock,* 638 N.E.2d 854, 856 (Ind.Ct.App.1994). Here, because Wife transferred a one-half interest in the Harrison Street House to her daughter sometime during the marriage with Husband's knowledge and consent, the only vested property interest Wife had in the Harrison Street House at the time of dissolution was a one-half interest, valued at thirty-nine thousand dollars. Accordingly, we conclude that the trial court did not err by

including only the value of Wife's remaining interest in the Harrison Street House in the marital estate for division between the parties.

## V. Attorney Fees

■ Lastly, Husband contends that the trial court erroneously ordered him to pay for Wife's appellate attorney fees.

■ Indiana Code section 31–15–10–1(a) authorizes the trial court to order a party to pay a reasonable amount for the cost to the other party of maintaining a dissolution proceeding. This includes the award of reasonable appellate attorney fees. *Beeson v. Christian,* 594 N.E.2d 441, 443 (Ind.1992). Moreover, the trial court "enjoy[s] broad discretion in awarding allowances for attorney's fees. Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court." *Selke v. Selke,* 600 N.E.2d 100, 102 (Ind. 1992). In other words, we review such awards only for an abuse of discretion. *Holman v. Holman,* 472 N.E.2d 1279, 1288 (Ind.Ct.App.1985). In assessing attorney fees, however, the court *must* consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors, which bear on the reasonableness of the award. *Selke,* 600 N.E.2d at 102 (emphasis added) (citations omitted).

In the case at bar, the trial court ordered Husband, sua sponte, to pay Wife's attorney five thousand dollars for appellate attorney fees following an appeal bond hearing held approximately one month after it entered its Judgment and Decree of Dissolution.[3] Our review of the record reveals that there was some evidence be-

fore the trial court that suggests an award of fees to Wife may have been reasonable.[4] However, the trial court failed to hold an evidentiary hearing on this issue and there is no indication it considered both Husband's and Wife's respective economic circumstances and each person's ability to pay his or her own appellate attorney fees.

While we recognize the trial court's "inherent authority to make allowances for attorney fees . . . in the interest of seeing that equity and justice is done on both sides[,]" *Crowe v. Crowe,* 247 Ind. 51, 211 N.E.2d 164, 167 (1965), the trial court "must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such other factors as bear on the reasonableness of the award." *Barnett v. Barnett,* 447 N.E.2d 1172, 1176 (Ind.Ct.App. 1983). In failing to hold an evidentiary hearing in order to consider these issues, the trial court abused its discretion. *See Barnett,* 447 N.E.2d 1172 (Ind.Ct.App. 1983) (holding that the trial court abused its discretion in awarding appellate attorney fees to wife where trial court failed to conduct evidentiary hearing and where there was no indication that it considered the economic circumstances of the parties, despite evidence before the court from prior dissolution action that wife was unemployed and without assets and husband was employed with substantial assets). Accordingly, we reverse the trial court's order of appellate attorney fees in favor of Wife.

## VI. Conclusion

In conclusion, we affirm the trial court's decision to follow Indiana's statutory pre-

---

3. While both parties discuss the trial court's order following the appeal bond hearing, the trial court's order is not contained in the record. The only evidence pertaining to the trial court's order regarding appellate attorney fees is found in the "Chronological Case Summary" which contains the following entry made on July 8, 1999: "Findings and Order on Appeal Bond and Fees entered. Court denies [Husband's] request to stay execution of proceedings to enforce [judgment].

Court orders no appeal bond is required and orders [Husband] to pay $5,000.00 to [Wife's attorney] . . . for [attorney] fees for defending against [Husband's] appeal." (R. 5.)

4. For example, at the time of the appeal bond hearing, Wife was unemployed, had no income, and was going to lose her car. (R. 659.)

sumption favoring an equal division of marital property. We further conclude that the trial court did not err in failing to find Wife paid herself contrary to the terms of the provisional order or in failing to find Wife dissipated marital assets. However, we reverse the trial court's award of appellate attorney fees to Wife and remand this cause to the trial court with instructions to re-determine (1) the value of the bail bond business, excluding that amount of the business which is attributable to Husband's personal good will, if any, and (2) the value of Husband's BUF account held at People's Bank.

Affirmed in part, reversed in part, and remanded with instructions.

MATTINGLY, J., and KIRSCH, J., concur.