## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 14 2016, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Peter M. Yarbro
Fred R. Hains
Sara E. Tumbleson
Hains Law Firm, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robin L. Rajski,

*Appellant-Petitioner,*

v.

Robert Rajski,

*Appellee-Respondent.*

April 14, 2016

Court of Appeals Case No.
71A03-1505-DR-259

Appeal from the St. Joseph Circuit Court

The Honorable Michael G. Gotsch, Judge

The Honorable Andre B. Gammage, Magistrate

Trial Court Cause No.
71C01-1305-DR-273

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant/Cross-Appellee-Petitioner, Robin Rajski (Robin), appeals the trial court's Decree of Dissolution, dissolving her marriage to Appellee/Cross-Appellant-Respondent, Robert Rajski (Robert).

We affirm, in part, reverse, in part, and remand.

## ISSUES

Robin raises six issues on appeal, which we consolidate and restate as:

(1) Whether the trial court abused its discretion in equally dividing the marital estate;

(2) Whether the trial court abused its discretion by not awarding spousal maintenance to Robin; and

(3) Whether Robin is entitled to attorney's fees.

On Cross-Appeal, Robert raises one issue, which we restate as: Whether the trial court abused its discretion by finding that he had dissipated marital assets.

## FACTS AND PROCEDURAL HISTORY

Robin and Robert were married on June 28, 1996, and one child was born, Z.R., in 1998. The parties separated on December 3, 2012. During the marriage, Robert was self-employed with Bella Terra Lawn Sprinklers, which services lawn sprinklers during the warmer months and plows snow during the

winter months. In the calendar year of 2012, Robert had a gross income of $51,743.00. Robin acted as the office manager for Bella Terra until the separation, and her responsibilities included handling the books and the accounts, mailing information to customers, and setting up appointments. She worked twenty to sixty hours per week, at a rate of fifteen dollars per hour.

[5] Robin has an Associate's Degree in Medical Assisting from Ivy Tech. While attending Ivy Tech, Robin took out a student loan, which is currently in default, with a balance of $1,286.44. She is also a Certified Medical Assistant and is certified as a mortgage broker. On two occasions, most recently in 2012, she worked at Memorial Hospital in South Bend. In connection with a position she held previously at Notre Dame, Robin had a TIAA-CREF retirement account. As of February 22, 2005, the account had a balance of $2,030.51. At the time of the dissolution hearing, Robin was unemployed, had no income, and was seeking disability benefits from the Social Security Administration. She has already been denied benefits after a full agency application process, including appeals. At the time of the appellate briefs, Robin has a pending lawsuit in federal district court for judicial review of the agency's determination.

[6] Robin reports to suffer from several auto immune disorders. She asserts to have lupus, fibromyalgia, gastroparesis, lazy bowel syndrome, and arthritis of all joints. In a deposition admitted at trial, Dr. James Harris (Dr. Harris), Robin's physician, testified that "several of [Robin's] problems limit her from being able to work or be an effective employee in any position." (Petitioner's Ex. 1, p. 15). Dr. Harris did not "anticipate she will improve to the point where she can work

again." (Petitioner's Ex. 1, p. 17). Although he confirmed that Robin is still able to drive and can maintain her house, Dr. Harris concluded that Robin is "disabled," which he defined as an "inability to hold gainful employment." (Petitioner's Ex. 1, p. 38). He clarified

> [a]s far as I can tell, her ability to use her hands as a medical transcriptionist is intact. I don't see any problems with her hands or arms or ability to type or any of those things. The problem is her ability to function on a regular basis in any role to consistently attend work, to be able to be fully functional on a daily basis. I think her diseases collectively cause her a great number of days where she can't function, where regardless of what her employment task might be, she wouldn't be able to perform those in an effective way that would be satisfactory to an employer. For example, driving, yes, there are days she could do that maybe on a p.r.n. basis, you know. But to be consistently employed, that would be very difficult because of frequent illnesses, relapses, whatever.

> A medical transcriptionist, she has the ability to be trained in that. She could - - I think she could mentally and physically do the work at a point in time, but I think on a regular basis, I think would be virtually impossible for her.

(Petitioner's Ex. 1, pp. 40-41). However, Dr. Harris nuanced that it could be "possible" for Robin to "work from home in some capacity." (Petitioner's Ex. 1, p. 43).

[7]     Between May 2 and May 18, 2013, after the parties had separated but before Robin had filed her petition for dissolution, Robert made five withdrawals from

the parties' joint bank account, for a total amount of $4,666, without Robin's knowledge.

[8] On May 29, 2013, Robin filed a petition for dissolution of marriage. During the hearing on December 3, 2013, the trial court affirmed the parties' agreement for joint legal and physical custody of Z.R. On December 1, 2014, the trial court conducted a hearing on the petition for dissolution. On March 31, 2015, the trial court entered its findings of fact and conclusions thereon, equally dividing the marital estate. The trial court determined each party to be responsible for its own attorney fees. On April 20, 2015, the trial court amended its order, denying Robin's request for spousal maintenance because she had "not established that she is incapacitated, or that the party's daughter, [Z.R.], is incapacitated to the extent that [Robin] has to forego working to care for the daughter." (Appellant's App. p. 62). On April 30, 2015, Robert filed a motion to correct error, which was granted in part[1] and denied in part by the trial court on June 8, 2015.

[9] Robin now appeals and Robert cross-appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### APPEAL

_____

[1] In its order, the trial court granted a downward revision in the amount of Robert's weekly child support payments and clarified the tax exemptions. These issues are not before this court.

## I. *Division of the Marital Estate*

Robin contends that the trial court's equal division of the marital estate was not just and reasonable in light of her medical history, current condition, and economic circumstances. The division of marital assets lies within the sound discretion of the trial court. *Bertholet v. Bertholet*, 725 N.E.2d 487, 494 (Ind. Ct. App. 2000). Thus, we will reverse only if that discretion is abused. *Id.* "An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (citing *Wells v. Collins*, 679 N.E.2d 915, 916 (Ind. Ct. App. 1997)). As a reviewing court, we may not reweigh the evidence or assess the credibility of witnesses, and we consider only the evidence most favorable to the trial court's disposition of marital property. *Id.*

Here, the trial court made findings of fact and conclusions of law thereon pursuant to Ind. Trial Rule 52(A) in its dissolution decree and its amendment thereof. Our standard of review is therefore two-tiered. "We first determine whether the evidence supports the findings and then whether those findings support the judgment." *Bertholet*, 725 N.E.2d at 495. On review, we do not set aside the trial court's findings or judgment unless clearly erroneous. T.R. 52(A). A finding is clearly erroneous when there is no evidence or inferences reasonably drawn therefrom to support it. *Bertholet*, 725 N.E.2d at 495. The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* We may affirm the judgment on any

legal theory supported by the findings if that theory is consistent with "all of the trial court's findings of fact and the inferences reasonably drawn from the findings[,]" and if we deem such a decision prudent in light of the evidence presented at trial and the arguments briefed on appeal. *Id.*

[12] The division of marital property in Indiana is a two-step process. *Thompson v. Thompson*, 811 N.E.2d 888, 912 (Ind. Ct. App. 2004), *trans. denied*. The trial court must first determine what property must be included in the marital estate. *Id.* Included within the estate is all the property acquired by the joint effort of the parties. *Id.* With certain limited exceptions, this "one-pot" theory specifically prohibits the exclusion of any assets from the scope of the trial court's power to divide and award. *Id.* Only property acquired by an individual spouse after the final separation date is excluded from the marital estate. *Id.*

[13] After determining what constitutes marital property, the trial court must then divide the marital property under the presumption that an equal split is just and reasonable. Ind. Code § 31-15-7-5. A party who challenges the trial court's division of the marital estate must overcome a strong presumption that the trial court considered and complied with the applicable statute. *Frazier v. Frazier*, 737 N.E.2d 1220, 1223 (Ind. Ct. App. 2000). This presumption may be rebutted if a party presents relevant evidence regarding the following factors: (1) each spouse's contribution to the acquisition of property, regardless of whether the contribution was income producing; (2) acquisition of property through gift or inheritance prior to the marriage; (3) the economic circumstances of each

spouse at the time of the disposition; (4) each spouse's dissipation or disposition of property during the marriage; and (5) each spouse's earning ability. *See* I.C. § 31-15-7-5.

[14] Here, the trial court found that an equal division of the marital estate would be just and reasonable. The trial court first established all the marital assets and marital liabilities and then divided the net marital estate evenly between the parties. "The [c]ourt determine[d] this disposition to be equitable and an equal division of the assets, having taken into consideration the statutory requirements in I.C. [§] 31-15-7-5, the significant disparity in income between the parties, and the significate [sic] debts taken on by [Robert]." (Appellant's App. p. 22). Nonetheless, focusing upon her economic circumstances and earning ability, Robin attempts to rebut the presumption of an equal division. She maintains that during the marriage she made major contributions to Robert's business while at the same time being the primary care giver for their daughter. Furthermore, she posits that her current economic circumstances are negatively affected by her medical condition, which prevents her from working.

[15] The record reflects that prior to the parties' separation, Robin worked twenty to sixty hours per week in Robert's business and she acknowledged to being paid fifteen dollars per hour. Due to the separation, she discontinued her work in the business. She now maintains that she cannot find work because of her medical problems. Although she applied for social security disability benefits, it should be noted that at the time of filing the appellate briefs, Robin's request had been declined and a federal appeal to that decision was pending.

Nevertheless, despite her extensive medical problems, the trial court gave credence to Dr. Harris' testimony that it might be possible for Robin to work from home in some capacity. In its findings, the trial court accounted for Robert's earning abilities and "significant disparity in income" by assigning him most of the debts of the marriage. Based on the evidence before us, we cannot say that Robin overcame the strong presumption that an equal split of the marital estate is just and reasonable.

[16] In a cursory argument, Robin also takes issue with three specific items in the trial court's property division: the specificity of the requirement that Robert pay all of the joint taxes due, the attribution of Robin's retirement account to her share of the parties' assets, and the requirement that she pay her own student loan.

[17] With respect to the taxes due and owing, both parties agree that the trial court intended Robert to pay these taxes but failed to specifically direct him to do so in its order. Accordingly, we remand to the trial court to clarify its order.

[18] At trial, Robert submitted evidence of Robin's TIAA-CREF retirement account which had a balance of $2,030.51 in 2005. Despite Robin's claim that she had withdrawn all the money from the account "to pay off accounts," no evidence was submitted that this specific retirement account no longer existed. (Transcript p. 55). Although the trial court acknowledged the age of the account—"given it is seven years before the divorce is filed"—the trial court admitted the evidence and placed it in the marital pot. (Tr. p. 146). As such, it

is apparent that the trial court weighed the evidence and judged the credibility of the witnesses in reaching its decision on this issue. Robin's claim amounts to a request to reweigh the evidence, which we decline to do. *See Bertholet*, 725 N.E.2d at 494.

[19] With respect to Robin's student loan in the amount of $1,286.44, she argues in a single sentence that her "student loan should be included on the list of marital [assets] as the loan was incurred in 2006 and is clearly a marital asset, and should be included in the marital pot." (Appellant's Br. p. 19). In its division, the trial court determined "[Robin's] student loan is not included in the marital debt. Mother is to pay this debt on her own and to hold [Robert] harmless thereon." (Appellant's App. p. 20). Nevertheless, we have repeatedly held that student loans incurred during the marriage are marital obligations and thus are part of the marital estate. *See Nornes v. Nornes*. 884 N.E.2d 886, 889 (Ind. Ct. App. 2008); *Roberts v. Roberts*, 670 N.E.2d 72, 77 (Ind. Ct. App. 1996), *trans. denied*. Accordingly, the trial court erred by assigning Robin the student loans on the basis that she has the degree and she should pay for it.[2] We remand to the trial court with direction to include the student loan in the marital pot.

II. *Spousal Maintenance*

---

[2] However, a trial court may give due consideration to the effect that the degree may have in determining the earnings ability of the party holding the degree. *See* I.C. § 31-15-7-5(5).

Robin contends that the trial court abused its discretion by failing to award her spousal maintenance. Pointing towards her medical condition and Dr. Harris' testimony, she claims that she is entitled to incapacity maintenance. A trial court's decision to award maintenance is purely within its jurisdiction and we will only reverse if the award is against the logic and effect of the facts and circumstances of the case. *Augspurger v. Hudson*, 802 N.E.2d 503, 508 (Ind. Ct. App. 2004). "A maintenance . . . award is designed to help provide for a spouse's sustenance and support." *Wilhelm v. Wilhelm*, 397 N.E.2d 1079, 1081 (Ind. Ct. App. 1979). "The essential inquiry is whether the incapacitated spouse has the ability to support himself or herself." *McCormick v. McCormick*, 780 N.E.2d 1220, 1224 (Ind. Ct. App. 2003).

In reviewing a claim for incapacity maintenance, "[a] court may make the following findings . . .: If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court." I.C. § 31-15-7-2(1). In its amended order of April 20, 2015, the trial court extensively reviewed the evidence in its findings and found that

> [o]ther than testimony from [Robin] regarding her list of maladies, the only other evidence presented at trial regarding [Robin's] incapacity was the deposition of [Dr. Harris]. Dr. Harris testified that [Robin] was incapacitated and therefore unable to work; however, Dr. Harris also state[d] that [Robin] could possibly work from home.

(Appellant's App. p. 60). The trial court concluded that "[b]ased on the evidence presented at trial, [Robin] has not established that she is incapacitated or that the party's daughter, [Z.R.], is incapacitated to the extent that [Robin] has to forego working to care for the daughter."[3] (Appellant's App. p. 62).

[22] In *Matzat v. Matzat*, 854 N.E.2d 918, 921 (Ind. Ct. App. 2006), this court reversed an award of maintenance where the wife had claimed back problems but failed to present any evidence suggesting the nature or origin of the problems, her diagnosis or prognosis, her recommended treatment, whether she had followed such treatment, or the permanency of the problem. Significantly, the wife in *Matzat* had applied for social security benefits and had been denied. *Id.* We concluded that such meager evidence could not sustain an award of incapacity maintenance. *Id.*

[23] Similarly, here, Robin testified as to her medical problems and submitted Dr. Harris' testimony. While Dr. Harris did not anticipate Robin to improve to the point where she can work again, the trial court deemed it important that Dr. Harris nuanced his testimony by noting that it could be "possible" for Robin "to work from home in some capacity." (Petitioner's Ex. 1, p. 43). Moreover, the trial court noted that Robin had worked for the family business and that she was a certified medical assistant. Most importantly, Robin "had been denied social security benefits." (Appellant's App. p. 61). Accordingly, in line with

_____

[3] On appeal, Robin no longer claims incapacity based upon her daughter's condition, but focuses on spousal maintenance based on her own medical problems.

*Matzat*, we conclude that, based on the evidence, the trial court did not abuse its discretion by declining to award incapacity maintenance.

### III. *Attorney's Fees*

Robin contends that the trial court abused its discretion by not awarding her attorney's fees. Comparing Robert's earning ability and award of the marital residence to her lack of "assets of substantial value," she requests this court to reverse the trial court's denial of attorney's fees. (Appellant's Br. p. 22).

Indiana Code section 31-15-10-1(a) provides that a trial court in a dissolution proceeding "periodically may order a party to pay a reasonable amount . . . for attorney's fees . . .; including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment." We review a decision on attorney's fees in connection with a dissolution decree for an abuse of discretion. *Crider v Crider*, 15 N.E.3d 1042, 1053 (Ind. Ct. App. 2014), *trans. denied*. When deciding whether to award attorney's fees, trial courts must consider the relative resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and earn an adequate income, and other factors that bear on the reasonableness of the award. *Id*. The legislative purpose behind I.C. § 31-15-10-1 is to ensure that a party in a dissolution proceeding is able to retain representation when he or she would otherwise be unable to afford an attorney. *Id*. When one party is in a superior position to pay fees over the other party, an award of attorney's fees is proper. *Id*.

Here, despite a request for attorney's fees from both parties, the trial court ordered the parties to be responsible for their own legal fees. We agree. The enumeration of assets in the marital estate reflects few items of substantial value, and its total worth amounted to $152,472. These assets are practically overshadowed by the liabilities carried by the parties during the marriage, which amounted to $136,119, resulting in a net marital estate of $16,353. Even though the trial court awarded Robert most assets of value, the trial court also shifted most of the marital debts to him. In support of her argument, Robin again relies on her inability to earn an income; however, the trial court, relying on Dr. Harris' testimony, opined otherwise. Accordingly, with a low balance in the net marital estate and an equal division of these assets, we cannot say that Robert is in a superior position to pay attorney's fees. *See id*.

## CROSS-APPEAL

On cross-appeal, Robert challenges the trial court's determination that he dissipated marital assets.[4] Our court reviews findings of dissipation in various contexts under an abuse of discretion standard. *Goodman v. Goodman*, 754 N.E.2d 595, 598 (Ind. Ct. App. 2001), *reh'g denied*. We will reverse only if the trial court's judgment is clearly against the logic and effect of the facts and the reasonable inferences to be drawn from those facts. *Id*.

---

[4] Although our motions panel granted Robin time to file a reply/cross-appellee's brief, Robin did not avail herself of this opportunity.

[28]  Dissipation of marital assets involves "the frivolous, unjustified spending of marital assets." *Id.* The test for dissipation of marital assets is "whether the assets were actually wasted or misused." *Id.* Factors to consider in determining whether dissipation has occurred include: (1) whether the expenditure benefited the marriage or was made for a purpose entirely unrelated to the marriage; (2) the timing of the transaction; (3) whether the expenditure was excessive or *de minimis*; and (4) whether the dissipating party intended to hide, deplete, or divert the marital asset. *Id.*

[29]  In its order, the trial court concluded that Robert

> removed the sum of $4,666.00 within about a two-week period, much of it withdrawn in cash and with no evidence of its use for the benefit of the family. The [c]ourt determined that the monies taken by [Robert] were used for his own benefit and not for the benefit of the family.

(Appellant's App. p. 52).

The parties separated on December 3, 2012, with the petition for dissolution filed on May, 29, 2013. The evidence reflects that Robert made five contested withdrawals from the parties' joint bank account: $1,700 on May 2, 2013; $900 on May 13, 2013, $1,006 on May 15, 2013, $60 on May 16, 2013, and $1,000 on May 18, 2013. *See In re Marriage of Coyle*, 671 N.E.2d 938, 943 (Ind. Ct. App. 1996) ("[T]ransactions which occur during the breakdown of the marriage, just prior to filing a petition or during the pendency of an action, may require heightened scrutiny.") Robin testified that she had "no idea what" the

withdrawals were for. (Tr. pp. 49-50). *See id.* ("The non-dissipating party's participation in or consent to the expenditure is a relevant consideration."). In his testimony, Robert stated—without any supporting evidence—that the $1,006 withdrawal was "a mortgage payment." (Tr. p. 178). However, he admitted not to know what he did with the cash withdrawals of $1,700, $900, and $1,000. In light of this evidence, the trial court concluded that all five withdrawals were used for Robert's own benefit and not for the family's needs. Accordingly, the trial court's judgment is not clearly against the logic and effect of the facts before it, and as we find no abuse of discretion, we affirm the trial court's conclusion of dissipation.

## CONCLUSION

[30] Based on the foregoing, we remand to the trial court to specifically direct Robert to pay the taxes due and owing. We also remand with instruction to include Robin's student loan in the marital estate and to recalculate the equal division of the estate, if necessary. We affirm the trial court in all other respects.

[31] Affirmed.

[32] Najam, J. and May, J. concur