Theodore J. REESE, Appellant–Respondent,

v.

Bonnie M. REESE, Appellee–Petitioner.

No. 75A03–9502–CV–47.

Court of Appeals of Indiana.

Oct. 15, 1996.

---

Stanley C. Fickle, Peter J. Rusthoven, Barnes & Thornburg, James A. Buck, Darryn L. Duchon, Indianapolis, for appellant–respondent.

Wilson S. Stober, Goodin & Kraege, Andrew Z. Soshnick, Baker & Daniels, Indianapolis, David J. Wallsmith, Nichols, Wallsmith & Weaver, Knox, for appellee–petitioner.

**OPINION**

STATON, Judge.

Theodore J. Reese ("Theodore") appeals the trial court's judgment dissolving his marriage to Bonnie M. Reese ("Bonnie"). He presents four issues for our review which we consolidate and restate as follows:

I. Whether the trial court abused its discretion in utilizing an early valuation date for a business whose value declined during the pendency of the dissolution proceedings.

II. Whether the trial court erred by including proceeds from the noncompetition agreement in the marital estate.

III. Whether the trial court erred in ordering Theodore to pay a substantial portion of Bonnie's attorney fees.

We affirm in part, reverse in part, and remand.[1]

Bonnie and Theodore were married in 1964 and had two children, an emancipated son and a daughter attending college. In 1975, Theodore founded a corporation, Cadence Environmental Energy, Inc. ("Cadence"), which engaged in hazardous waste disposal. Stock in the corporation was owned entirely by Theodore and Bonnie, each owning 90% and 10% respectively.

Cadence processes hazardous waste derived fuels. Specifically, Cadence takes hazardous waste and processes it into fuel burned by cement companies. These cement companies are Cadence's primary customers. Until the late 1980's, Cadence only had the ability to process liquid hazardous wastes. Thereafter, Cadence developed, patented, and implemented new technology which involved solid hazardous wastes. This innovation caused tremendous sales and growth, increasing Cadence's net income to over $3.7 million in 1991.

Cadence comprises the bulk of the marital estate and its valuation was a contested issue at trial. Bonnie and Theodore both present-

---

1. Bonnie also filed a motion for a determination of the trial court's jurisdiction to divide marital tax liabilities which have arisen since the trial court's judgment. Because the appeal is complete and our jurisdiction terminated, we remand this case to the trial court for a determination of the issue raised in the motion.

ed expert testimony regarding the value of Cadence. Using a June 30, 1992 valuation date, Theodore's accounting firm, Peat Marwick, valued Cadence at $7.8 million. Using the same valuation date, but a different accounting approach, Bonnie's accounting firm, Ernst and Young, valued the business at $14 million.

Following this valuation, and as a result of certain federal environmental regulations,[2] Cadence's business declined. Prior to trial, Peat Marwick, prepared a new valuation of the business using a valuation date of June 30, 1993, which valued Cadence at $6 million. The trial court rejected the valuations offered by Theodore's experts and adopted the value as of June 30, 1992. It assigned Cadence a value of $14 million.

In addition to Cadence, Theodore, along with Norman Foster ("Foster") founded another company in the early 1980's, Petro–Chem Processing, Inc. ("Petro–Chem"). Petro–Chem, located in Detroit, Michigan, processed hazardous wastes for Cadence. After Bonnie filed her petition for dissolution, Theodore sold Foster his stock in Petro–Chem.[3] As a result, Theodore received $7,850,000 for his stock and $3.6 million for a covenant not to compete. The proceeds for both the stock and the covenant not to compete were included in the marital estate and subjected to equal distribution.

Following an eleven day dissolution hearing, the bulk of which consisted of evidence regarding Cadence, the trial court entered findings of fact and conclusions of law. The court found, *inter alia,* that the net worth of the marital estate was $27,085,010. The valuation included Cadence and the proceeds from the Petro–Chem sale less taxes. The proceeds received for the covenant not to compete were included in the marital estate. The trial court awarded Theodore $16,769,-451 and Bonnie $10,315,559, plus a cash payment of $3,336,946, which resulted in each party receiving $13,542,505.[4] In addition, the trial court deferred judgment on the issue of Bonnie's request for attorney fees and litigation expenses.

Theodore filed a motion to correct error wherein he petitioned the court: (1) to redetermine the value of Cadence using a June 30, 1993 valuation date, assign Cadence a value of $6 million, and then divide the marital estate equally; or alternatively, (2) open the judgment pursuant to Ind. Trial Rule 52(B), take additional testimony on the value of Cadence or grant a new trial pursuant to Ind. Trial Rule 59(J) in order for the court to consider Cadence's recent financial performance, assign a value, and divide the marital estate equally; or alternatively, (3) order Cadence sold and divided equally in the marital estate pursuant to IND.CODE § 31–1–11.5–11(b)(3) (1993).[5] The trial court denied Theodore's motion.

---

2. The Environmental Protection Agency ("EPA") promulgated the Boiler and Industrial Furnace regulations in accordance with the federal Resource Conservation Recovery Act. *See* 40 C.F.R. §§ 266.100 to .112. These rules, effective August 1992, affected the burning of hazardous waste in industrial furnaces and directly impacted the burning of hazardous waste derived fuels in cement kilns. As a result, cement companies' capacity to burn this fuel was greatly reduced and Cadence's business was detrimentally affected.

3. Bonnie filed a petition for dissolution in October 1991 and requested a temporary restraining order which was granted by the trial court. It restrained the parties from "transferring, encumbering, concealing or in any way disposing of property except in the usual course of business or for the necessities of life." Record at 18. However, the trial court permitted Theodore's sale of his Petro–Chem stock finding that the sale "shall not be deemed a violation of this Court's restraining order so long as the parties agree in writing respecting all aspects of the sale except the characterization of covenant not to compete proceeds as marital property."
Record at 35.

4. The cash payment to Bonnie was reduced by $440,011 for capital improvements and operating subsidies to Bonnie's horse farm paid by Theodore during the course of the dissolution action. Thus, Bonnie received a total cash award of $2,786,935 secured by a lien on Theodore's residence.

5. He also alleged that the trial court's balance sheet of the marital assets had changed as a result of the accrual of interest, payment of taxes, and by agreement of the parties or by court order. The parties mutually agreed to a resolution regarding his second allegation of error and the trial court entered an Agreed Entry and Order which revalued the marketable securities, cash, and brokerage account balances. As a consequence of the revaluation, Theodore's cash installment obligation was increased to $2,986,-714.50.

After the record had been filed commencing this appeal, this court suspended its jurisdiction to allow the trial court to decide the issue of attorney fees. The trial court granted in part and denied in part Bonnie's request for attorney fees and expenses. The court ordered Theodore to pay $339,761.21 of Bonnie's fees and expenses, and Bonnie to pay the balance of $106,424.96. This court then resumed jurisdiction and the appeal continued.

## I.

### *Valuation*

First, Theodore alleges that the trial court abused its discretion when it failed to use the June 30, 1993 valuation date for the purpose of determining Cadence's value as a part of the marital estate. Theodore notes that, pursuant to IND.CODE § 31–1–11.5–11(c) (1993), the trial court "shall presume that an equal division of the marital property between the parties is just and reasonable." The trial court's over-valuation of Cadence, he argues, results in an unequal division of the marital estate.

■ We note at the outset that both Bonnie and Theodore requested the trial court to enter findings of fact and conclusions of law. When a party has requested specific findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this Court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Bd. of Comm'rs v. Rittenhouse,* 575 N.E.2d 663, 665 (Ind.Ct.App. 1991), *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To

determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■ In a dissolution action, the trial court has broad discretion in determining the value of property, and its valuation will only be disturbed for an abuse of discretion. *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). If there is sufficient evidence to support the trial court's decision, no abuse of discretion occurred. *Id.*

■ The trial court also has discretion in choosing the date on which to value the property. *Id.* at 102–103. It can choose any date between the date of the filing of the petition for dissolution and the date of the hearing. *Id.* at 103. Although the date selected for the valuation has the effect of allocating the risk of a change in value between the parties, this allocation of risk is entrusted to the discretion of the trial court. *Id.* The choice of an early valuation date for an asset which decreases in value is not necessarily an abuse of discretion. *Id.* We will reverse the trial court's decision as to a valuation date only if it is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* at 102.

■ Here, the June 30, 1992 valuations performed by both parties relied upon a business forecast prepared by Cadence executives. This business forecast took into account the new environmental regulations and their expected impact upon Cadence's business. Theodore presented evidence of the new regulations at trial and also presented evidence that the impact of the new regulations was greater than anticipated, causing Cadence's value to drop drastically by June 30, 1993. In setting the valuation date for Cadence, the trial court acknowledged the new regulations and their impact on the value of Cadence. However, it determined that Theodore should bear the risk of the change in value because he had complete control of the company both before and after the peti-

tion for dissolution was filed. He alone had the power to decide whether to retain the company or sell it before the value dropped too low.[6] Theodore's control of Cadence is amply supported by the record evidence.

The trial court determined in its discretion that the risk of a decline in Cadence's value should be borne by Theodore, because he controlled the company; thus, it chose an early valuation date. Because there is evidence in the record to support Theodore's control of the company, we cannot say that the trial court's choice of an early valuation date is clearly against the logic and effect of the circumstances before it. *Quillen, supra,* at 102. Accordingly, we conclude that the trial court's choice of an early valuation date was not an abuse of discretion.[7]

## II.

### *Covenant Not to Compete*

 Theodore next contends that the trial court's determination that the proceeds he received from the covenant not to compete were marital property and subject to distribution was error. Theodore's argument fails. Theodore characterizes the proceeds of the covenant not to compete as future income. Future earnings of one spouse are not marital property subject to division in a dissolution proceeding. *Bressler v. Bressler,* 601 N.E.2d 392, 397 (Ind.Ct.App.1992). However, a restrictive covenant not to compete which is signed in conjunction with the sale of a business represents the goodwill of that business absent evidence to the contrary. *Berger v. Berger,* 648 N.E.2d 378, 383 (Ind.Ct.App.1995). The value of the goodwill of a business is included in the marital estate. *Cleary v. Cleary,* 582 N.E.2d 851, 853 (Ind. Ct.App.1991).

Here, Theodore signed the covenant not to compete in conjunction with the sale of his interest in Petro–Chem. The total proceeds were $11,450,000. There is evidence in the record that the value of his interest in the business was approximately $11 million. There is also evidence that Theodore's goal was to sell the business for between $10 million and $12 million. This evidence all supports the determination that the non-compete agreement was to protect the goodwill of the business. Absent evidence to the contrary, the noncompete agreement represents the goodwill of the company, which is includable in the marital estate. *Berger, supra,* at 383. Theodore argues that by signing the covenant not to compete he was foregoing business opportunities, and thus the proceeds attributable to the non-compete agreement represent future income. However, this is simply an invitation to reweigh the evidence which we will not do. *DeHaan, supra,* at 1320. The trial court reviewed the evidence of the sale and determined that the proceeds did not represent future income which was excludable from the marital estate. Because there is evidence to support the trial court's findings and the findings support the judgment, the judgment is not clearly erroneous. *Id.* Accordingly, we conclude that the trial court did not err in determining that the entire proceeds from the Petro–Chem sale constituted marital property.

## III.

### *Attorney Fees*

 Finally, Theodore argues that the trial court abused its discretion in ordering him to pay Bonnie's attorney fees in the amount of $339,761.21. In dissolution and post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney fees. IND.CODE § 31–1–

---

**6.** Theodore argues that he was not free to sell the company due to the trial court's restraining order prohibiting the dissipation of marital assets. However, if Theodore had wished to sell the company he could simply have requested permission from the trial court which had already shown its willingness to approve such transactions by its approval of the Petro–Chem sale. Theodore also argues that this finding is erroneous because there is no evidence of any offers to purchase Cadence. Theodore did not have to wait for a purchase offer. If a sale of Cadence was the best option, he could have put the business up for sale and solicited offers.

**7.** Theodore also argues that the trial court abused its discretion in denying his motion to correct error. Because we determine that the early valuation date and allocation of risk was not an abuse of discretion, there was no error to correct.

11.5–16(a) (1993). In awarding attorney fees, the trial court has broad discretion. *Selke v. Selke*, 600 N.E.2d 100, 102 (Ind.1992). An award of attorney fees is proper when one party is in a superior position to pay the fees of the other party. *See, e.g., In re Marriage of Pulley*, 652 N.E.2d 528 (Ind.Ct.App.1995), *trans. denied* (no abuse of discretion when husband received greater share of marital estate and earned twice as much as wife); *Millar v. Millar*, 581 N.E.2d 986 (Ind.Ct.App.1991), *reh. denied, summarily aff'd*, 593 N.E.2d 1182 (Ind.1992) (no abuse of discretion when there was a disparity in income potential and resources available to parties). We will only reverse the trial court's decision if the award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In assessing attorney fees, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and which party initiated the action. *Selke, supra.*

▪ Here, the evidence indicates that the parties each received equal amounts of the marital estate. Theodore's main asset is Cadence, while Bonnie received a wide variety of assets including cash, brokerage accounts and marketable securities. Thus, Bonnie's resources are more liquid and more diversified than Theodore's assets. In addition, although Bonnie is not employed, through conservative investment of the marital assets alone, without depleting those assets, she has earning potential of $600,000 annually. Bonnie also received substantial real estate holdings, which further increase her earning ability. In contrast, Theodore only received one asset which is struggling financially and does not enjoy the security benefits of diversification. These factors do not support a determination that Theodore is in a superior position to pay Bonnie's attorney fees. Because the award of attorney fees is against the logic and effect of the circumstances before the trial court, we conclude that the trial court abused its discretion in ordering Theodore to pay Bonnie's attorney fees. *Selke, supra*, at 102. Accordingly, we reverse the trial court's order with respect to attorney fees.

Affirmed in part, reversed in part, and remanded.

BAKER, J., concurs.

HOFFMAN, J., concurs in part, and dissents in part with opinion.

HOFFMAN, Judge, concurring and dissenting.

I concur except to the portion of the majority opinion which reverses the trial court's award of attorney's fees to Bonnie, to which I dissent. IND. CODE § 31–1–11.5–16 (1992 Supp.) provides, in pertinent part:

(a) The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name.

A trial court enjoys broad discretion in assessing attorneys' fees in dissolution cases. *Quillen v. Quillen*, 671 N.E.2d 98 (Ind.1996). In considering whether to make such an award and the appropriate amount, the trial court may consider factors including: the resources of the parties, the relative earning ability of the parties, the superiority and availability of funds, the result achieved, the size of the estate, and the difficulty of the issues. *See Riddle v. Riddle*, 566 N.E.2d 78, 83 (Ind.Ct.App.1991); *Canaday v. Canaday*, 467 N.E.2d 783, 785 (Ind.Ct.App.1984).

The trial court ordered Theodore to pay a portion of Bonnie's attorney's fees and expenses in the exact amount he had paid as advances for such purposes during the pendency of the proceedings. Theodore was ordered to pay $339,761.21, and Bonnie was ordered to pay the balance of $106,424.96. The court's order noted that the parties had agreed that the fees and expenses were necessary and reasonable.

Here, the majority reassessed the evidence in a light most favorable to Theodore to

conclude that the trial court abused its discretion in ordering him to pay a portion of Bonnie's attorney's fees and expenses. While acknowledging that the trial court divided the marital assets equally, the majority spins a tale of woe for Theodore based upon a lack of diversity in his assets. Suggesting an investment strategy for Bonnie which would allow her to maximize her assets, presumably so that she can pay her own fees, does not satisfy our standard of review or adequately demonstrate the required deference for the trial court's determination.

The majority erroneously supplants the trial court's findings with its own. The trial court specifically found that Theodore has a substantially greater earnings expectation than does Bonnie. Further, the trial court's findings regarding the valuation of the assets explicitly found a healthy business entity with substantial net worth, including cash in the approximate amount of five million dollars. The court found that Theodore's salary and bonus from Cadence exceeded one million dollars. Further, the court required that Bonnie reimburse Theodore for a shopping trip to Paris, a cruise and various items she purchased for the children, but represented as gifts from her solely. The marital estate was sizeable. That the complexity of the issues required substantial litigation expenses is clear. The trial court's determination is based upon substantial evidence and consideration of the relevant factors.

As noted above, the trial court's order allowing Bonnie a portion of her attorney's fees and expenses was in the sum of the advances made by Theodore during the pendency of the action. Because the appellate tribunal does not reweigh the evidence and the statutory authority for awarding attorney's fees does not prohibit those with equal asset distributions from receiving or paying attorney's fees, I would vote to affirm the trial court's decision.