**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JENNIFER JONES AUGER**
Law Offices of Jennifer Jones Auger
Franklin, Indiana

ATTORNEY FOR APPELLEE:

**JUSTIN T. BOWEN**
Bowen Law, LLC
Indianapolis, Indiana



FILED
Oct 05 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

CHRISTOPHER CONES,                      )
                                        )
    Appellant,              )
                                        )
        vs.     )     No. 49A02-1108-DR-783
                                        )
TINA M. (CONES) IANNOTTI,               )
                                        )
    Appellee.               )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather Welch, Judge
Cause No. 49D12-0208-DR-2184

**October 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Christopher Cones (Father) filed for dissolution of his marriage to Tina M. (Cones) Iannotti (Mother) in 2002. Despite entry of an agreed judgment that same year, issues regarding property distribution and child support have persisted over the last ten years. After setting aside a 2004 judgment, the trial court issued an order in 2011 addressing child support and assets and liabilities of the marital estate. On appeal, Father presents the following restated issues:

1. Did the trial court abuse its discretion by granting Mother's Ind. Trial Rule 60(B) motion to set aside the 2004 judgment?

2. Did the trial court abuse its discretion when valuing the family business?

3. When determining child support for 2003, 2004, and 2006, did the trial court fail to give conclusive effect to Mother's admissions regarding her income during those years?

We dismiss in part, reverse in part, and remand.

Mother and Father married in September 1994, and they had three sons together. Mother brought a daughter into the marriage, whom Father subsequently adopted. During the marriage, Mother and Father formed and operated a business, Dash Delivery, Inc., which they ran out of their home. Dash Delivery was a trucking company that brokered freight.

On August 19, 2002, Father filed for dissolution of marriage. Due to a protective order obtained by Mother, Father was barred from the marital residence and, thus, effectively from the family business until the spring of 2003. During this time, Mother withdrew over $100,000 from the company for her own personal use and funneled business from Dash Delivery to a new company she had formed.

Unaware of Mother's activities regarding Dash Delivery, Father entered into an

2

agreement of settlement in December 2002, which called for the parties to equally divide the stock and ownership of Dash Delivery. The agreement also provided, among other things, that Mother would remain in the marital residence, the parties would share joint custody of the children, and neither party would pay child support.

On February 28, 2003, the parties entered into an agreed entry that provided in part for temporary physical custody of the couple's three sons to be transferred to Father, with Mother having no contact with the boys until further order of the court. Pursuant to the agreed entry, Mother was ordered to vacate the marital residence by March 11, transferring possession to Father. In exchange, Father was to pay Mother $15,000 "from his proceeds of Dash Delivery, Inc." *Appellant's Appendix* at 48.

On July 21, 2003, the parties entered into another agreed entry. This time Father was granted sole physical custody of their daughter as well. The agreement provided "no visitation or support is ordered at this time until the parties have an opportunity to further work through their matters." *Id*. at 51. Protective orders against both parties remained in effect. Finally, the agreed entry provided: "there are disputes between the parties as to the division of certain personal and/or real property matters, including business interests, and counsels agree to submit the matter to binding arbitration or notify the Court that the same will be presented to the Court by summary testimony, all within thirty (30) days." *Id*. at 51-52.

Mother moved to Connecticut in January 2004 after directing her attorney, Robert Bruner, to resolve any pending issues so that she could just move on. Bruner attended two attorney-only pretrial conferences in February and April. At the April conference, the trial

court set the matter for hearing on business claims, child support, sale of the marital residence, orders of protection, and miscellaneous property issues on August 9, 2004. Bruner sent notice of the August hearing to Mother's former Indianapolis address, at which she no longer lived. Thereafter, on July 8, 2004, Bruner moved to withdraw his appearance, noting that he had lost contact with Mother. The motion was granted.

Mother did not appear at the August 9, 2004 hearing, and Father presented evidence in her absence. In particular, he introduced a business valuation by Nina Koett, indicating that the value of the business at the time Father filed for dissolution was $1,271,249.50. Further, Father testified that at the time of the hearing there was nothing left of the business except liabilities.

The trial court issued its judgment on August 12, 2004. In part, the trial court found that Mother was "setting up a parallel business to take the clients of Dash Delivery prior to the approval of the Decree of Dissolution and Agreement of Settlement" and that "she had no intent to follow through with the Agreement of Settlement she signed." *Id*. at 57. The court valued the business on the date of filing at $1,271,249.50 and ordered Mother to pay half of that sum to Father. Further, the court ordered Mother to pay weekly child support in the amount of $626.92.

On February 9, 2007, Mother filed an independent complaint to set aside the August 2004 judgment, claiming she did not have notice of the hearing and had only recently learned of the judgment. Father sought summary judgment. Following a hearing, the trial court issued an order on February 17, 2009, denying Father's request for summary judgment and granting Mother's motion to set aside the August 2004 judgment. Although Father attempted

4

unsuccessfully to pursue an interlocutory appeal of the denial of summary judgment, he did not directly appeal from the final judgment setting aside the August 2004 judgment.

All pending issues were eventually set for hearing on March 15, 2011. Father appeared at the hearing in person and by counsel, while Mother appeared telephonically. Mother claimed to have just been released from a seven-day commitment to a psychiatric ward and indicated that she was on several medications. Due to concerns about Mother's current mental capacity, the hearing was continued to May 2, 2011. Mother was ordered to appear in person and to do so without taking her medication. After verifying Mother's address, the court also warned Mother of the importance of responding to Father's discovery requests. Finally, the court requested that Mother provide the court with her current medical records by March 28.

On April 1, 2011, Father filed a motion for directed verdict, motion for contempt, and motion to have requests for admissions deemed admitted. Specifically, Father indicated that Mother had not filed the requested medical records with the trial court and had not responded to discovery requests served on February 3, 2011.

Mother did not appear for the May 2, 2011 hearing, which the trial court conducted in her absence. At the beginning of the hearing, the trial court granted Father's motion to have the requests for admissions deemed admitted. Father then presented additional evidence. The trial court issued its order on May 26, 2011. Relevant to the issues on appeal, the trial court valued Dash Delivery at zero, awarded Father over $50,000 for his share of funds Mother took from the business, and determined past child support based upon tax documents,

5

finding that evidence more credible than the admissions.[1]  Father filed a timely motion to correct error, which the trial court denied.  Father now appeals.

1.

We initially address Father's argument that the trial court abused its discretion by granting Mother's T.R. 60(B) motion to set aside the August 2004 judgment.  T.R. 60(C) expressly provides that such a ruling is a "final judgment" from which an appeal may be taken.  Accordingly, Father had thirty days from entry of the T.R. 60(B) judgment to either file a motion to correct error or a notice of appeal.  *See* Ind. Trial Rule 59; Ind. Appellate Rule 9.  Father did neither.  The timely filing of a notice of appeal is a "jurisdictional prerequisite[,]" and "[f]ailure to conform to the applicable time limits results in forfeiture of an appeal."  *Walters v. Austin*, 968 N.E.2d 233, 234 (Ind. Ct. App. 2012) (citing App. R. 9(A)(5)), *trans. filed. See also Hatfield v. Edward J. DeBartolo Corp.,* 676 N.E.2d 395 (Ind. Ct. App. 2002), *trans. denied*.  We are, therefore, without jurisdiction to review the T.R. 60(B) judgment issued by the trial court on February 17, 2009.  Father's untimely appeal with respect to this judgment is dismissed.

---

[1]  The court also entered judgment in the total amount of over $21,000 for personal property Mother had turned over to Father.  Further, the court found that Mother converted funds from bank accounts owned by the children and ordered Mother to pay treble damages, totaling over $9,500.

2.

Father challenges the date upon which the trial court based its valuation of Dash Delivery (May 2, 2011 – the date of the final hearing). He claims the date of separation (August 19, 2002) should have been used because after that date Mother dissipated the assets of Dash Delivery from over $1.2 million "down to virtually zero as of the date of the hearing on August 9, 2004." *Appellant's Brief* at 8. Father asserts that it is "neither just nor reasonable to allow Mother the benefit of her dissipation of the assets…by using a date of valuation after the dissipation occurred." *Id*. at 9.

> The trial court has discretion to value the marital assets at any date between the date of filing and the date of the final hearing, and we will reverse the trial court's decision as to a valuation date only where it is clearly against the logic and effect of the facts and circumstances before the trial court. *Reese v. Reese,* 671 N.E.2d 187, 191 (Ind. Ct. App. 1996), *trans. denied.* Although the date selected for the valuation of an asset has the effect of allocating the risk of a change in the asset's value to one party or the other, this allocation of risk is entrusted to the discretion of the trial court. *Id.*

*Trabucco v. Trabucco*, 944 N.E.2d 544, 558 (Ind. Ct. App. 2011), *trans. denied*.

In the May 2011 order, the trial court explained its valuation of the business as follows:

> [Father] submitted Petitioner's Exhibit 4 to the Court as evidence of the value of Dash Delivery and claims it is an expert valuation. However, the Court was not provided evidence on the qualifications of Nina Koett, other than her letter indicates she works for Koett Accounting Services. Thus, the Court does not know if she is a Certified Public Accountant or a secretary for this company. In addition, the introduction of Ms. Koett's letter states "per your request to investigate the account balances of Dash Delivery, Inc., I have reviewed the documents which you have provided me with and have found a number of items which may or may not represent inconsistencies." The request for the above mentioned review was made by the Father and Ms. Koett's letter is dated August 5, 2004. There was no evidence presented that there are any assets of Dash Delivery or that Dash Delivery has any goodwill value.

7

> Therefore, the Court finds that [Father] has failed to submit any evidence that the business is currently operational and has any value which the Court would be entitled to divide between [Father] and [Mother]. Thus, [] based on the lack of evidence that Dash Delivery has any value, the Court finds the value of Dash Delivery to be $0.00.

*Appellant's Appendix* at 336. In light of this explanation, it is evident that the trial court questioned the business valuation provided by Father's expert and gave it little to no weight. This would be entirely within the trial court's discretion *if* certain admissions did not exist in the instant case.

The record reveals that Father served Mother with requests for admissions, which Mother ignored even after being warned by the trial court that failure to respond could result in the discovery requests being deemed admitted. Thereafter, Father filed a motion to have the requests for admissions deemed admitted pursuant to Ind. Trial Rule 36. Mother did not respond to the motion and did not seek to withdraw the admissions prior to or during the final hearing. As a result, the trial court granted Father's request to have the requests for admissions deemed admitted.

The failure to respond in a timely manner to a request for admissions causes those matters to be conclusively established by operation of law. *Kerkhof v. Kerkhof*, 703 N.E.2d 1108 (Ind. Ct. App. 1998) (citing T.R. 36). "Unless a pleading is withdrawn or superseded, any admission contained in the pleading is conclusive as to that party." *Lutz v. Erie Ins. Exchange*, 848 N.E.2d 675, 678 (Ind. 2006). The admission "may be taken as true as against the party without further controversy or proof." *Id*. In other words, "there is no need to prove the established fact at trial", and "[t]he trial court is not permitted to disregard the admission." *Kerkhof v. Kerkhof*, 703 N.E.2d at 1111.

With respect to the valuation of the business, Mother admitted, albeit by default, that "at the time of filing of the Petition for Dissolution of Marriage, Dash Delivery, Inc. had a value of $1,271,249.40." *Appellant's Appendix* at 184. In addition, she admitted as follows: "The August 4, 2004, Business Valuation Report…submitted by Nina M. Koett is a true and accurate valuation report for [Dash Delivery] and this report is admissible into evidence without any further foundation evidence." *Id*. at 185. In light of these admissions, it was not within the trial court's discretion to judge the credibility or accuracy of Koett's valuation of the business as of August 2002. The value of the business at the time of filing was conclusively established to be $1,271,249.40. Although it is undisputed that within two years of Father filing for dissolution the value of the business was entirely depleted, the evidence indicates this was due to Mother's actions.[2]

On appeal, Mother asserts that the trial court had a rational basis for valuing the business at $0.00 – "its concerns about the credibility of the valuation figure provided by

---

[2]  In this regard, Mother made the following admissions:

> On December 23, 2002, [Mother] created, owned and operated a company known as Ianotti Logistics, Inc. which competed with Dash Delivery, Inc.

> [Mother] dissipated the assets of Dash Delivery, Inc. by paying Ianotti Logistics, Inc. vendors through Dash Delivery, Inc. accounts.

> [Mother] dissipated the assets of Dash Delivery, Inc. by withdrawing corporate funds totaling $103,226.84 for personal benefit from August 12, 2002 through May 29, 2003, during [the] divorce and without authority from [Father].

*Id*. at 185.

Appellant's witness, due to the Appellant's failure to establish her qualifications and the witness's own statement, contained in her valuation report, that there may be certain inconsistencies with the documents provided to her…." *Appellant's Brief* at 9. To be sure, the trial court's valuation was clearly based upon its lack of confidence in the valuation provided by Father's expert. As set forth above, however, the trial court was bound to accept this valuation figure as conclusively established by Mother's admissions. The trial court failed in this regard. Accordingly, we conclude that the trial court abused its discretion when valuing the business. On remand, the trial court is directed to value the business at $1,271,249.40 and divide the asset, taking into account the $51,613.42 already awarded Father for dissipated assets of the business.

3.

Father argues that the trial court erred in failing to establish Mother's 2003, 2004, and 2006 income according to her admissions. He claims Mother's income was $113,177.65, $113,177.65, and $57,000.00 for these years, respectively.

The trial court found Mother's income to be $14,523.00 for 2003, not established for 2004, and $32,093.50 for 2006. In its order on Father's motion to correct error, the trial court acknowledged that its findings were contrary to the admissions but indicated that other evidence (i.e., tax returns and documents) was more credible.

With respect to Mother's 2003 income, the trial court noted the disparity between the deemed-admitted amount ($113,177.65) and the amount reflected on Mother's federal tax return ($14,523.00) for that year. The court then indicated that "[e]ven though Request for Admission 18 is deemed conclusively established, it does not require a trial court to find such

evidence is more credible than a tax return. The trial court has discretion to evaluate the credibility of the evidence". *Appellant's Appendix* at 355. We must disagree. The trial court's weighing of the evidence failed to give the admission conclusive effect, as required by T.R. 36. The trial court abused its discretion by rejecting the admitted fact in favor of other evidence it judged more credible. *See Kerkhof v. Kerkhof*, 703 N.E.2d 1108.

The trial court made the same error when determining Mother's income for 2004. Specifically, the trial court denied Father's motion to correct error regarding 2004 because "it would be mere speculation to find that her 2004 income is the same as her 2003 income." *Appellant's Appendix* at 356. Because Father provided no evidence of Mother's income, aside from the admission indicating that her income was approximately the same as 2003, the court awarded no support for 2004. This was error, as her income for 2004 had been conclusively established by the relevant admission.

The trial court also failed to give conclusive effect to the admission relating to Mother's income for 2006. The trial court explained:

> Father argues that Mother's 2006 income should be $57,000.00 as determined by Magistrate Lifhitz in the Superior Court of the Judicial District of New Haven, Connecticut and based on Request for Admission 21 which states "Your income for 2006 was in excess of $57,000.00 as determined by the Court in New Haven, Connecticut in the excerpt attached as Exhibit 9". Exhibit 18 is a copy of the Mother's tax return which shows her income was $7,889.00 plus income from a 1099 from Coldwell Banker Real Estate Service which was not included in the 2006 Tax Return. The Court finds this information is more credible and reliable than a finding from a Magistrate Judge in another state who may not have had jurisdiction over this case and because the laws and rules to calculate child support in Connecticut may not be the same as the Indiana Child Support Guidelines. Therefore, the Court DENIES the Father's Motion to Correct Error on the Mother's 2006 income.

*Id*. at 357. Though we understand the concerns expressed by the trial court, the trial court

was bound by the admission made by Mother regarding her 2006 income.

The trial court erred in its determination of Mother's income for 2003, 2004, and 2006. The proper amounts were conclusively established by Mother's admissions. On remand, the trial court shall recalculate child support due for these years using the deemed-admitted amounts, $113,177.65, $113,177.65, and $57,000.00.

Dismissed in part, reversed in part, and remanded.

PYLE, J., concurs.

BROWN, J., concurs in part and dissents in part.

**IN THE**
**COURT OF APPEALS OF INDIANA**

CHRISTOPHER CONES,                    )
                                       )
    Appellant,                    )
                                       )
        vs.                       )     No. 49A02-1108-DR-783
                                       )
TINA M. (CONES) IANNOTTI,              )
                                       )
    Appellee.                     )

**Brown, Judge, concurring in part and dissenting in part**

I concur with the majority as to issues 1. and 3. but respectfully dissent as to issue 2. I would find no abuse of discretion by the trial court in its valuation of the family business. As stated by the majority, the trial court has the discretion to value the marital assets at any date between the date of filing and the date of the final hearing. <u>Reese v. Reese</u>, 671 N.E.2d 187, 191 (Ind. Ct. App. 1996), <u>trans.</u> <u>denied</u>. Through her admission, Mother admitted that in August 2002, at the time of filing the Petition for Dissolution of Marriage, the business had a value of $1,271,249.40. She also admitted that the August 4, 2004 Business Valuation Report is a true and accurate valuation report for the business. However, at the time of the final hearing it was undisputed that the value of the business was entirely depleted. The trial court took the depletion of assets into account and found that Mother dissipated assets from

13

the business totaling $103,226.84 and awarded Father $51,613.42 as a result of the dissipation.

I would affirm the trial court's valuation of the business, finding it within the court's discretion to value the business as of the date of the final hearing.  In all other respects I concur with the majority.