# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 10 2015, 10:45 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Robert H. Little
Brookston, Indiana

ATTORNEY FOR APPELLEE

David E. Baum
Chesterton, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Martin E. Rogness,

*Appellant-Petitioner,*

v.

Roberta L. Rogness,

*Appellee-Respondent.*

February 10, 2015

Court of Appeals Cause No. 91A04-1405-DR-211

Appeal from the White Circuit Court.

The Honorable Robert W. Thacker, Judge.

Cause No. 91C01-1109-DR-130

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Martin E. Rogness (Husband) appeals the trial court's division of marital property in the dissolution of his marriage to Appellee-Respondent, Roberta L. Rogness (Wife).

We affirm in part, reverse in part, and remand.

## ISSUES

Husband raises four issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court erred in its division of the marital estate; and

(2) Whether the trial court abused its discretion in its valuation of a tract of real estate.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married on November 16, 1986. Until a disabling back injury necessitated his retirement, Husband worked as a police officer for the City of Portage in Porter County, Indiana. Wife was employed by Porter County as a court reporter. The marriage produced no children, but Wife has two adult children from a prior marriage.

Early in the marriage, Husband's mother procured the necessary licenses to open a new tavern, the Sportsman's Lounge, in Valparaiso, Indiana. Husband primarily operated the business, but at various times Wife assisted with

bookkeeping and bartending. Upon his mother's death in 1999, Husband inherited the Sportsman's Lounge.

[6] Then, in 2001, Husband was diagnosed with lung cancer as a result of being exposed to asbestos in the course of his employment with the United States Steel Corporation many years earlier. In August of that year, Husband and Wife filed a negligence lawsuit against Husband's former employer and fifty-nine other companies that manufactured, distributed, or installed asbestos-containing products. The lawsuit resulted in a net settlement of $307,291.51.

[7] At the time they married, Husband and Wife each owned their own homes, and Husband also owned five duplexes. Throughout the course of their marriage, Husband and Wife accumulated more than twenty additional tracts of real estate, most of which were used as rental properties. To manage their rental business, they established Rogness Investments, Inc. Husband and Wife also partnered with Wife's son to form Rogness Construction, Inc. With the exception of the marital residence, 157 York Circle in Valparaiso (York Circle Property), and 412 Sassafras in Valparaiso (Sassafras Property), titles to the parties' remaining properties were held by either Rogness Investments or Rogness Construction.

[8] On September 21, 2011, after nearly twenty-five years of marriage, Husband filed a petition to dissolve the marriage. Within several months of Husband filing the petition for dissolution, foreclosure proceedings were initiated against the York Circle Property and the Sassafras Property. In February of 2012, a

receiver was appointed to manage the Sportsman's Lounge and the rental properties. On June 6, 2013, a judgment of foreclosure was entered against Husband and Wife for the Sassafras Property for $108,559.98. Then on October 17, 2013, a judgment of foreclosure was entered on the York Circle Property in the amount of $298,712.97. The Porter County Sheriff was directed to sell the properties. Per the parties' agreement, the receivership was terminated on December 20, 2012.

[9] On October 29-30, 2013, the trial court conducted the final hearing of the divorce proceedings. Husband and Wife submitted a stipulation as to the values of the bulk of their marital assets, but they disputed the values of the Sportsman's Lounge and their lake house, 5098 Highland Cove, Monticello, Indiana (Highland Cove Property), as well as how the marital estate should be divided. On January 30, 2014, the trial court entered its Decree of Dissolution and Final Judgment and Property Settlement Order, granting the divorce and ordering a distribution of the marital assets that would result "slightly in additional amounts for the Husband." (Appellant's App. p. 31).

[10] On February 28, 2014, Husband filed a Motion to Correct Error. In part, he alleged that the trial court erred by failing to order Wife to reimburse Husband for his half of the money she misappropriated and by failing to consider the income generated by the rental properties as part of its division. On April 9, 2014, the trial court conducted a hearing and, except for a *nunc pro tunc* correction of a clerical error, denied Husband's motion.

Husband now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

In this case, the trial court issued special findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). Therefore, our court "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). On review, our court will find clear error only if the evidence is insufficient—either directly or by inference—to support the findings or if the findings are insufficient to support the judgment. *Capehart v. Capehart*, 705 N.E.2d 533, 536 (Ind. Ct. App. 1999), *reh'g denied*; *trans. denied*.

Additionally, in a dissolution proceeding, trial courts are vested with broad discretion over matters concerning the disposition of the marital estate. *Alexander v. Alexander*, 927 N.E.2d 926, 933 (Ind. Ct. App. 2010), *trans. denied*. As such, our court employs "a strict standard of review." *Smith v. Smith*, 854 N.E.2d 1, 5 (Ind. Ct. App. 2006). We presume "that the trial court considered and complied with the applicable law." *Alexander*, 927 N.E.2d at 933. The party challenging the trial court's determination bears the burden of overcoming this presumption, which "is one of the strongest presumptions applicable to our consideration on appeal." *Id.* Accordingly, "we will reverse a property distribution only if there is no rational basis for the award." *Smith*, 854 N.E.2d at 6. We will consider only the evidence most favorable to the trial court's

judgment and will neither reweigh evidence nor reassess the credibility of witnesses. *Perkins v. Harding*, 836 N.E.2d 295, 299 (Ind. Ct. App. 2005).

## II. *Division of Marital Estate*

Husband claims that the trial court erred in its division of the marital property. In calculating and distributing marital property, Indiana courts utilize a "'one-pot' theory." *Id.* (quoting *Fobar v. Vonderahe*, 771 N.E.2d 57, 58 (Ind. 2002)). Specifically,

> [i]n an action for dissolution of marriage . . . , the court shall divide the property of the parties, whether:
> (1) owned by either spouse before the marriage;
> (2) acquired by either spouse in his or her own right:
>    (A) after the marriage; and
>    (B) before final separation of the parties; or
> (3) acquired by their joint efforts.

Ind. Code § 31-15-7-4(a). The one-pot method ensures that all marital property is "subject to the trial court's power to divide and award." *Hill v. Hill*, 863 N.E.2d 456, 460 (Ind. Ct. App. 2007). Marital property includes both the assets and liabilities of the spouses. *Capehart*, 705 N.E.2d at 536.

Indiana law requires that the distribution of the marital pot between the spouses be accomplished "in a just and reasonable manner." I.C. § 31-15-7-4(b). "The court shall presume that an equal division of the marital property between the parties is just and reasonable." I.C. § 31-15-7-5. This presumption may be rebutted with evidence regarding the following factors:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
(2) The extent to which the property was acquired by each spouse:
    (A) before the marriage; or
    (B) through inheritance or gift.
(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
(5) The earnings or earning ability of the parties as related to:
    (A) a final division of property; and
    (B) a final determination of the property rights of the parties.

I.C. § 31-15-7-5. If, based on a consideration of these factors, the trial court determines that an unequal distribution is warranted, it must "set[] forth its reasons for so doing." *Maloblocki v. Maloblocki*, 646 N.E.2d 358, 362 (Ind. Ct. App. 1995).

[16] In this case, the trial court determined "that the presumption of an equal division of property has been rebutted . . . , and based upon the evidence presented, a fair and equitable division of the marital property would result slightly in additional amounts for the Husband." (Appellant's App. pp. 30-31). In making this decision, the trial court considered several of the factors enumerated in Indiana Code section 31-15-7-5, including that

> both parties owned real estate prior to their marriage, the Husband received property (real property and cash) as an inheritance from his mother, the parties received a large monetary settlement as a result of the Husband's mesotheliom[]a, the Husband is disabled, and the parties' assets are dissipated and used for the benefit of the Wife's

children from a prior marriage and the Wife's actions in hiding those
assets.

(Appellant's App. p. 30).

### A.  *Unequal Distribution*

Husband contends that the trial court committed reversible error because its
property distribution improperly favors Wife.  We will uphold an unequal
distribution unless the trial court's justifications for the deviation "are clearly
against the logic and effect of the facts and circumstances before the court."
*Maloblocki*, 646 N.E.2d at 362-63.  Here, neither party challenges the trial
court's determination that an unequal division is justified; rather, they dispute
whether the trial court actually effectuated the distribution in favor of Husband
as it intended.

In its Decree of Dissolution, the trial court neither calculated the gross marital
estate nor calculated the total value of each party's share; nor did it fix the
specific percentage of the estate that each party was to receive.  *See Montgomery
v. Faust*, 910 N.E.2d 234, 238 (Ind. Ct. App. 2009) ("It is not enough for a trial
court to simply say that its distribution is 'unequal'; just as important is exactly
how unequal the distribution is.").  "Appellate courts are ill-equipped to
determine the value of specific assets or of the total marital estate in the first
instance, so it is vital to our review to have the trial court do so."  *Id.*
Nevertheless, we recognize that, in the present case, the trial court would have
struggled to assign a value to the gross marital estate in light of the parties'
failure to present specific evidence of value for a significant number of their

assets. *See Perkins*, 836 N.E.2d at 301-02. Instead, the trial court distributed the assets and liabilities item by item, assigning values only where the parties had submitted evidence thereof.

[19] Based on the findings, it appears that the trial court awarded $709,218.82 to Husband, excluding his PERF Disability Pension and social security disability benefits,[1] and $790,644.71 to Wife. This results in a division of 52.7% of the marital estate to Wife and only 47.3% to Husband, which is clearly inconsistent with the trial court's determination that any deviation from an equal division should favor Husband.

[20] Although Wife agrees with the trial court's findings, she disputes Husband's computation of the net value of five of the properties that she was awarded: 392 Clear Creek, 609 Osage, 766-1 Governor, 739 Juniper, and 5155 Sherwin. She notes that "[t]he parties stipulated that the *unencumbered* value of these real

---

[1] Wife contends that Husband's PERF Disability Pension and social security disability benefits must be included in the marital pot. Unlike an ordinary retirement pension, a disability income benefit is not generally considered marital property, but it may be calculated as marital property "to the extent that either marital assets were used to acquire the future income or the income is future compensation for past services, as opposed to replacement for lost earning capacity due to disability." *Severs v. Severs*, 837 N.E.2d 498, 499-500 (Ind. 2005). Here, the record does not reveal whether Husband made voluntary contributions to an employer-sponsored program, *i.e.*, his PERF Disability Pension, to support its inclusion in the marital pot. *See Jendreas v. Jendreas*, 664 N.E.2d 367, 371 (Ind. Ct. App. 1996), *trans. denied*. As to his social security disability benefits, our supreme court has conclusively established that these are not marital assets and are thus not subject to distribution. *See Severs*, 837 N.E.2d at 501.

properties, as a group, on the date of dissolution was $420,000." (Appellee's Br. p. 18). They further stipulated that these properties are collateral for a $219,600 line of credit debt held by Rogness Construction. Thus, she argues that because "there was a $219,600 lien . . . the actual unencumbered net value of the real property at the time of dissolution was only $200,400.00"—not $310,200 as Husband asserts. (Appellee's Br. p. 19). Utilizing Wife's figures, her share of the estate would be reduced by $109,800, resulting in a 51%-49% split in Husband's favor, which she asserts is consistent with the trial court's findings. However, we disagree with Wife's calculation.

[21] In the Decree of Dissolution, Wife received a 50% ownership interest in Rogness Construction; her son owns the other 50%. The trial court ordered Husband to transfer title to the five aforementioned tracts from Rogness Investments to Wife—not to Rogness Construction. Even though Wife's personal real estate secures the entire $219,600 line of credit, pursuant to their business partnership, Wife's son is presumably liable for one-half of the company's debt—or $109,800. Thus, as the trial court found, only $109,800 of the line of credit is considered a marital debt, which has the net effect of reducing the value of the marital asset to $310,200.

[22] "When dividing marital property, the trial court must come close to the attempted apportionment otherwise the findings will not support the judgment." *In re Marriage of Pulley*, 652 N.E.2d 528, 531 (Ind. Ct. App. 1995), *trans. denied*. Because the trial court concluded that "a fair and equitable division of the marital property would result slightly in additional amounts for

the Husband" but the actual effect is 52.7% to 47.3% in Wife's favor, we must remand with instructions for the trial court to either execute a property division that is consistent with its findings or to enter additional findings that justify its current distribution. (Appellant's App. pp. 30-31).[2]

## B. *Indiana Code Section 35-15-7-5 Factors*

[23] Notwithstanding the fact that the trial court resolved to accord a larger share of the marital estate to him, Husband contends that the trial court abused its discretion by failing to adequately address all of the factors that would justify a disparate award. In particular, he asserts that the trial court's apportionment of the estate does not take into account the value of the property that he brought into the marriage or the impact of the mesothelioma settlement proceeds. Wife, in turn, posits that "Husband wholly fails to recognize or even take into consideration the entire property distribution and the remaining assets that were awarded to him from the marital estate." (Appellee's Br. p. 6).

[24] On appeal, our court acts under the presumption that the trial court considered the evidence in its entirety and "properly applied the statutory factors." *Helm v. Helm*, 873 N.E.2d 83, 90 (Ind. Ct. App. 2007). As such, we presume that the

---

[2] Although we have determined that a remand is necessary, we must address Husband's remaining claims as they will continue to be at issue on remand.

trial court did "not rely on just one of the factors listed in Indiana Code section 31-15-7-5" but instead considered "the factors 'in conjunction with relevant evidence regarding other statutorily prescribed factors, and with any evidence demonstrating additional reasons that an unequal distribution would be just and reasonable.'" *Id.* The trial court is under no obligation to address any factors that are not implicated by the evidence. *Id.*

### 1. *Value of Pre-Marital Property*

First, Husband argues that "the value of the property [that he] brought into the marriage at the time . . . of the Final Hearing was approximately $600,000[,]" which, "in and of itself, justified a greater deviation from a 50/50 division." (Appellant's Br. p. 11). Pursuant to Indiana Code section 31-15-7-5(2), a trial court *may* stray from the presumptive division of marital property if it finds that one spouse contributed more property to the marriage. However, nothing in this statute "suggests that the trial court *must* deviate from the traditional 50/50 split simply because one party presents evidence that he or she owned certain assets prior to marriage." *Bertholet v. Bertholet*, 725 N.E.2d 487, 495 (Ind. Ct. App. 2000).

In the present case, the trial court found:

> At the time the parties married, the Husband resided at and owned 409 West 600 North, Valparaiso, Indiana, and also owned four duplexes located at 3344-46, 3345-47, 3348-50, and 3349-51 Ashland, Portage, Indiana, and a duplex at 5155 Sherwin, Portage, Indiana. Such real estate was free and clear of any indebtedness at the time of the marriage. Mortgages were obtained against several of these properties during the marriage.

> At the time the parties married, the Wife resided at and owned 774-1 Fox River Road, Valparaiso, Indiana. Such real estate was free and clear of any indebtedness at the time of the marriage. A mortgage was obtained against this property during the marriage.

(Appellant's App. p. 18). The court also specified that it considered the fact that "both parties owned real estate prior to their marriage" in deciding that the distribution should favor Husband. (Appellant's App. p. 30).

[27] We find that Husband's argument that he is entitled to a larger share of the marital estate because "the net relative equity brought into the marriage by [him] would amount to approximately $500,000" is simply a request to reweigh evidence, which we decline to do. (Appellant's Br. p. 11). "While it is true that the trial court must consider a spouse's contribution of prior acquired property, that is but one factor for review and is entitled to no special weight." *Bertholet*, 725 N.E.2d at 496. Here, the trial court clearly contemplated the spouses' respective property contributions in determining that Husband should receive "slightly . . . additional amounts[,]" which is all that Indiana Code section 31-15-7-5 requires it to do. (Appellant's App. p. 31). Accordingly, we find no abuse of discretion.

### 2. *Mesothelioma Settlement Proceeds*

[28] Second, Husband argues that it was an abuse of discretion to "award[] the property that benefited from the mesothelioma settlement to the [W]ife." (Appellant's Br. p. 12). Husband and Wife's 2001 lawsuit resulted in a settlement with forty-one of the defendants for a net award of $307,291.51. At

the final hearing, both Husband and Wife testified that, during the marriage, they used the majority of these funds to pay down the mortgages on several of their rental properties. Husband now claims "that most, if not all, of the $307,291.51 proceeds (represented by three unencumbered properties) should have been set over to the Husband over and above a 50/50 division of other marital assets." (Appellant's Br. p. 12).

[29] In its Decree of Dissolution, the trial court specifically found that a deviation was warranted because "the parties received a large monetary settlement as a result of the Husband's mesotheliom[]a" and because "Husband is disabled." (Appellant's App. p. 30). The trial court determined "that the Husband shall receive, as his sole and separate property, all future net settlement proceeds that may be received as a result of the legal action." (Appellant's App. p. 24). Because the trial court considered the mesothelioma settlement as a factor justifying an unequal division, Husband assumes—without offering any support for his position—that he is necessarily entitled to receive the properties that directly benefited from the mesothelioma settlement. We disagree.

[30] At the time of the final hearing, all but five of the properties held by Rogness Investments were subject to a mortgage. The trial court allocated four of them, valued at $260,000, to Wife and only one, valued at $100,000, to Husband. Despite his claim that these tracts were all, at some point, encumbered by mortgages that were paid off with the mesothelioma funds, Husband presented no evidence to demonstrate the extent to which these five specific properties— and *only* these five properties—benefited from the mesothelioma proceeds.

Moreover, in determining whether a trial court has made a just and reasonable award, we must consider its "disposition of marital property 'as a whole, not item by item.'" *Perkins*, 836 N.E.2d at 299. So long as a trial court includes all marital assets in the marital pot, it has the discretion to decide whether to award an asset solely to one spouse or to apportion it between them. *Wanner v. Hutchcroft*, 888 N.E.2d 260, 263 (Ind. Ct. App. 2008). Because each spouse is entitled only to a just and reasonable share of the marital pot, not a specific share, we cannot say that it was an abuse of discretion for the trial court to award Wife with a portion of the real property simply because it may have benefited from the mesothelioma settlement proceeds.

## C. *Revenue of Rental Properties*

Husband also contends that the trial court abused its discretion in dividing the marital property by "fail[ing] to take into consideration whether each property was mortgaged or unmortgaged, resulting in a significantly unequal division of the net revenue." (Appellant's Br. p. 16). In particular, Husband asserts that whereas he was awarded only one unencumbered property, Wife received four tracts that are "free and clear" of any mortgages, which provided her with "a significantly larger portion of the rental business and the revenue therefrom." (Appellant's Br. p. 16).

We first note that the parties stipulated to the value of the majority of the rental properties and did not present evidence to demonstrate the cash flow thereof. As a result, Husband may not now challenge the values based on discrepancies in revenue generation. *See Perkins*, 836 N.E.2d at 302. Furthermore, contrary

to Husband's position that "the impact of dividing income-producing marital assets in a dissolution" is a matter of first impression, in Indiana, it is well established "that 'future earnings are not considered part of the marital estate for purposes of property division.'" *Severs*, 837 N.E.2d at 499 (quoting *Beckley v. Beckley*, 822 N.E.2d 158, 160 (Ind. 2005)); (Appellant's Br. p. 17).

[33] Our court has previously established that in "dividing the property, the court considers the value of the property owned by either spouse before marriage, acquired by either spouse in his or her own right before final separation, or acquired by the spouses' joint efforts, but *not the future income the marital property will produce after the dissolution*." *Smith*, 854 N.E.2d at 6. On occasion, Indiana courts have found "that certain rights to future payment constitute 'property' to be included in a marital estate." *Helm*, 873 N.E.2d at 88. However, in those instances, the party's interest in the future payment was vested. *Id.* Because Wife's ability to generate income from her share of the rental properties is contingent upon her decision to continue leasing and her ability to maintain tenant occupancy, we find no vested interest in this income. *See id.* Accordingly, the trial court did not abuse its discretion.

### D. *Attorney Fees*

[34] Next, Husband contends that the trial court erred in its division of the marital estate by allowing Wife to use marital assets to pay $5,000 in attorney fees. Particularly, based on the trial court's directive that "[e]ach party shall pay and be responsible for his or her own attorney fees[,]" Husband contends that the trial court should have ordered her to reimburse him for one-half of these fees.

(Appellant's App. p. 30). In its Decree of Dissolution, the trial court found that "Wife removed a $26,000.00 check that she found in the safe at the Sportsman's Lounge. She delivered the check to her prior attorney. She then used $5,000.00 to pay the retainer fee for her current attorney, and the remaining $21,000.00 was delivered to the receiver." (Appellant's App. p. 27). Similarly, the trial court found that Husband improperly retained $2,288 in rental income that he was required to turn over to the receiver.

[35] Based on its findings, we presume that the trial court included these depleted assets as part of the marital pot. *See Alexander*, 927 N.E.2d at 933. The trial court's findings do not indicate that either party's misuse of marital assets was to be charged against their shares of the estate or that Wife should reimburse Husband for the difference. Accordingly, we can infer that the trial court intended the parties to equally share the depleted assets, which would have no impact on the overall apportionment of the estate. *See* I.C. § 31-15-7-4(b). In its discretion, the trial court could still have considered Wife's expenditure of the $5,000 as a factor that weighed in favor of Husband receiving a larger distribution of marital property. *See* I.C. § 31-15-7-5(4). Because the trial court need only effectuate a just and reasonable distribution of the marital estate as a whole, it is not an abuse of discretion to accomplish its division without requiring Wife to reimburse Husband for one-half of her attorney fees. *See In re Marriage of Sloss*, 526 N.E.2d 1036, 1040 (Ind. Ct. App. 1988) ("The only requirement of distribution of assets and liabilities is one of reasonableness.").

### III.  *Valuation of the Highland Cove Property*

Lastly, Husband claims that the trial court's valuation of the Highland Cove Property is unsupported by the record.  In a dissolution proceeding, the trial court has broad discretion in valuing the marital property.  *Reese v. Reese*, 671 N.E.2d 187, 191 (Ind. Ct. App. 1996), *trans. denied*.  It is an abuse of discretion if "there is no evidence in the record supporting its decision to assign a particular value to a marital asset."  *Thompson v. Thompson*, 811 N.E.2d 888, 917 (Ind. Ct. App. 2004), *reh'g denied*; *trans. denied*.

Although the parties stipulated to the fact that the Highland Cove Property was subject to a mortgage debt of $172,000, they disputed its value.  During the final hearing, Husband submitted a comparative market analysis as evidence of value.  Using a comparable pricing method, the analysis proffered a "Suggested List Price" of $179,066.67.  (Husband's Exh. 7, p. 2).  On the other hand, Wife tendered an appraisal that was completed in December of 2010, which suggested a market value of $342,500.  In its Decree of Dissolution, the trial court found that "neither the appraisal nor the market analysis is a conclusive determination of value, and that the Highland Cove [P]roperty, including the adjoining lot, has a total fair market value of approximately $300,000.00, with a mortgage balance of $172,000.00 for a net fair market value of approximately $128,000.00." (Appellant's App. p. 19).  The trial court awarded the Highland Cove Property to Husband.

Our court has previously upheld a trial court's determination of value where it "was within the range of values supportable by the evidence."  *Sanjari v. Sanjari*,

755 N.E.2d 1186, 1191-92 (Ind. Ct. App. 2001). In this case, the trial court's valuation of $300,000 falls squarely within the range of the parties' evidence. Nonetheless, Husband asserts that because Wife's appraisal was obtained nearly a year before he filed the petition for dissolution, the trial court could not permissibly consider it as evidence of the Highland Cove Property's value. Husband therefore insists that the trial court was obligated to assign a value of $179,066.67 based on the only remaining evidence of value—his comparative market analysis. When reduced by the mortgage debt, this award would constitute an asset to Husband worth only $7,066.67.

[39] A trial court has discretion to choose the particular date on which to value the property. *Reese*, 671 N.E.2d at 191. The trial court abuses its discretion by "not selecting a date between the dissolution petition filing date and the final hearing date." *Trackwell v. Trackwell*, 740 N.E.2d 582, 584 (Ind. Ct. App. 2000), *trans. dismissed*. Here, even though Wife submitted an appraisal that is dated prior to the final separation date, there is no indication that the trial court valued the Highland Cove Property at $300,000 based on a valuation date that preceded the filing date. *See Thompson*, 811 N.E.2d at 919. During the final hearing, Husband asked Wife whether she "believe[d] that [the appraisals] accurately portray what these properties are worth today[,]" and she answered affirmatively. (Transcript p. 195). In addition, the trial court found that Husband had obtained his market analysis "for purposes of trial." (Appellant's App. p. 19). From this evidence, we are able to infer that the trial court chose to value the Highland Cove Property as of the date of the final hearing.

Because the trial court selected a value within the range of evidence, we find no abuse of discretion in its valuation of the Highland Cove Property.

## CONCLUSION

[40] Based on the foregoing, we conclude that the trial court erred in its division of the marital estate, and we remand with instructions for the trial court to either execute a property division that is consistent with its findings or to enter additional findings that justify its current distribution. We further conclude that the trial court acted within its discretion in its consideration of the statutory factors governing its distribution and in its valuation of the Highland Cove Property.

[41] Affirmed in part, reversed in part, and remanded with instructions.

Vaidik, C. J. and Baker, J. concur